[No. 1551.]

## HUMBOLDT COUNTY, RESPONDENT, *v.* LANDER COUNTY, APPELLANT.

COUNTIES—BOUNDARIES—TAXES. Pursuant to Stats. 1887 (p. 97), requiring the surveyor-general to place monuments at places where a railroad crosses a county line, and mark thereon, on the sides facing the respective counties, the name of the county and number of miles of said railroad therein—a map of such survey, when filed with the county recorder and secretary of state, to be *prima facie* evidence of the facts therein stated—the surveyor-general established a monument on a railroad track at a distance from the boundary between two counties as established by themselves. Thereafter, the track between the original boundary and the surveyor-general's monument was assessed by the county within which the surveyor-general located it, but other property on the strip between the original boundary and the line as fixed by the surveyor-general's monument was assessed by the county within which the original line, as fixed by the counties themselves, placed it: *Held*, that the placing of the monument by the surveyor-general did not change the boundary from the line originally established by the counties jointly, since the act does not authorize the establishing of new county lines, or the changing of county lines already established.

IDEM—IDEM—IDEM—ESTOPPEL. The fact that for six years after the placing of the monument the county within whose limits the original boundary located the track did not assess it, and acquiesced in its assessment by the other county, did not estop it from claiming the original line as the correct boundary, where it continued to assess all other property within the disputed tract.

IDEM—IDEM—IDEM—PAYMENT TO WRONG COUNTY—RIGHT OF RECOVERY. Stats. 1893 (p. 44) and Stats. 1891 (p. 146) fix the situs of property for taxation in the county where situated, and authorize a recovery of delinquent taxes by suit. Stats. 1891 (p. 140, sec. 12) provides that where real property is assessed by two counties, each claiming it to be within its limits, a payment of the taxes to either county shall be sufficient: *Held,* that where two counties assessed the same real property, each claiming it to be within its limits, and the taxes were paid to the wrong county, they may be recovered from such county by the county within whose limits the property is situate.

IDEM—RESTITUTION OF MONEY OR PROPERTY WRONGFULLY OBTAINED. If a county obtains money or property of others without authority of law, it will be compelled to make restitution, upon the principle that an obligation rests upon all persons, natural or artificial, to do justice.

APPEAL from the District Court of the State of Nevada, Washoe county; *A. E. Cheney,* District Judge:

Action by Humboldt county against Lander county. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

The facts sufficiently appear in the opinion.

*Henry Mayenbaum, James F. Dennis,* and *W. D. Jones,* District Attorney of Lander county, for Appellant:

I. There is no statute requiring Lander county to pay the money so received by it to Humboldt county. Lander county received the taxes in payment of its own assessment against the C. P. R. R. Co., and it cannot dispose of it, except as authorized by statute. By the general laws, Lander county was required to distribute said money so paid by the C. P. R. R. Co., like all moneys paid into the treasury for taxes, by paying to the state its proportion—*i. e.,* 90 cents— and to distribute the balance to the different funds of the county, and to pay the same to the parties having claims against the county. All this must be presumed to have been done by Lander county. *Omnia præsumunter rite acta.* (Lawson, Presumptive Ev. 53.)

II. The legislature has unlimited power and control over all the revenues of the counties. The courts have no jurisdiction over such matters. (Welty's Law of Taxation, sec. 51, p. 118; *Dubuque* v. *Chicago D. & M. R. Co.,* 47 Iowa, 196; Cooley on Taxation, p. 575, 168, 171; *Commissioners of Laramie County* v. *Commissioners of Albany County,* 92 U.

S. 307; *People* v. *Alameda County*, 26 Cal. 650; 1 Desty's Taxation, 269; *Hess* v. *Pegg*, 7 Nev. 30; *Ash* v. *Parkinson*, 5 Nev. 28; *Youngs* v. *Hall*, 9 Nev. 212; *R. R. Co.* v. *Stockton City*, 41 Cal. 147, 161, *et seq.*; *Payne* v. *Treadwell*, 16 Cal. 233; *Pattison* v. *Yuba County*, 13 Cal. 175, 189.)

III.   Assumpsit for money had and received cannot be maintained where the defendant, as in this case, has the legal custody of, and the legal right to retain, the money, or where, as in this case, the money is received under claim of right, and in defiance of defendant's right.   (*Carson R. L. Co.* v. *Bassett*, 2 Nev. 253; *Kelty* v. *Owens*, 4 Chand. (Wis.) 166; *Watson* v. *Stever*, 25 Mich. 386.)

IV.   To maintain the action of assumpsit for money had and received, there must either be an express or implied promise to pay the plaintiff.   (*Bloomer* v. *Denman*, 12 Ill. 240; *Whitehead* v. *Peck*, 1 Ga. 140; *Seaman* v. *Whitney*, 24 Wend. 260.)

V.   No promise could, possibly, be implied in this case. Lander county assessed this property, and received the money due for taxes thereon, for herself, and not for Humboldt county. If the property is claimed by Humboldt county, the C. P. R. Co. has the right, by express statute, to pay the taxes to Lander county.   (Gen. Stats. 1205.) And the legislature provided no means by which Humboldt county can maintain this action.   (*R. R. Co.* v. *Commissioners*, 98 U. S. 541; *Meredith* v. *Richardson*, 10 Ala. 828; *Gehr* v. *Hagerman*, 26 Ill. 438.)

VI.   "No promise can be presumed where the act, constituting the cause of action, is done in defiance of plaintiff's rights, under a claim of adverse right."   (*Carson R. L. Co.* v. *Bassett*, 2 Nev. 253; *Kelty* v. *Owens*, 4 Chand. (Wis.) 166; *Watson* v. *Stever*, 25 Mich. 386; *Sargent* v. *Striker*, 1 Har. N. J. L. 464; *Sadler* v. *Eureka Co.*, 15 Nev. 42; 2 Wharton's Contracts, 732.)

VII.   Lander county can be held on no promise, express or implied, unless it be authorized by statute.   (*McDonald* v. *The Mayor*, 68 N. Y. 23; *Donovan* v. *The Mayor*, 33 N. Y. 293; *Curtis* v. *Fiedler*, 2 Black, 479; *People* v. *Chapman*, 61 Cal. 267.)

VIII.   How can Lander collect the Humboldt taxes?   The counties had different rates.   The C. P. R. R. Co. did not pay

to Lander the Humboldt taxes, but it paid the taxes assessed by Lander. Lander county acts as the agent of the state, and is compelled to obey the mandates of the legislature. It does not, and cannot, act as the agent of Humboldt county. The legislature is the sole judge of the manner in which taxes shall be collected. Counties are quasi corporations, over which the legislature has supreme control. They are mere agencies of the state. (*Enright* v. *People*, 79 Ill. 214; *Shelley* v. *Detroit*, 45 Mich. 431; *Hamlin* v. *Meadville*, 6 Neb. 227; *Talbot Co.* v. *Queen Ann Co.*, 50 Md. 245; *Sioux City* v. *Washington Co.*, 3 Neb. 42; *Stewart* v. *Otto Co.*, 2 Neb. 177; *People* v. *Buffalo Co.*, 4 Neb. 150; *Hannibal* v. *Marion Co.*, 69 Mo. 571; *Richmond* v. *Daniel*, 14 Grat. 385; *Virginia* v. *Washington Co.*, 30 Grat. 474; *Nashville* v. *Franklin Co.*, 5 Lea, 707; *People* v. *Wilkerson*, 1 Idaho, 619; *Beck* v. *Allen*, 58 Miss. 143; *Perry Co.* v. *Selma*, 65 Ala. 391; *State* v. *Gracey*, 11 Nev. 227–8; *Merriwether* v. *Garrett*, 102 U. S. 511; *Lot* v. *Ross*, 38 Ala. 156; *Henderson* v. *Baltimore*, 8 Ind. 352; Cooley's Constitutional Limitations, 192; *Laramie Co.* v. *Albany Co.*, 92 U. S. 315; *Hess* v. *Pegg*, 7 Nev. 23; *Youngs* v. *Hall*, 9 Nev. 224; *Payne* v. *Dewey*, 16 Cal. 233; *Sadler* v. *Eureka Co.*, 15 Nev. 42.)

IX. Unless there is a statute giving the right to recover in such cases, Humboldt county had no right to sue. (*R. R. Co.* v. *Commissioners*, 98 U. S. 541.) Lander county assessed the property, and the C. P. R. R. Co. paid the taxes to Lander county, not as assessed by Humboldt county, but as assessed by Lander. Indeed, the C. P. R. R. Co. itself, having paid voluntarily, could not recover back the money. (*Oceanic* v. *Tappan*, 7 Fed. 645; *R. R. Co.* v. *Commissioners*, 98 U. S. 543; *Sonoma Co. Tax Cases*, 8 Saw. 312.)

X. But whether the payment was made voluntarily or not, is no concern of Humboldt county. It is a matter of *inter alios acta.* Humboldt county stands in no privity with either Lander county or the C. P. R. R. Co. Humboldt county can have no grievance against Lander. The law can't hurt anyone. (Cooley's Const. Lim. 575; *Ex parte Kearney*, 7 Wheat. 45; *Phillips* v. *Welch*, 12 Nev. 179; *Ash* v. *Parkinson*, 5 Nev. 28; *Guilford* v. *Chenango Co.* 13 N. Y. 146; *Laramie Co.* v. *Albany Co.*, 92 U. S. 311.

XI. From 1887 to 1895 Humboldt county has acquiesced

in the boundary line, as established by the surveyor-general by authority of law, and it is estopped now from questioning it. (*Missouri* v. *Iowa*, 7 How. U. S. 660; *Rhode Island* v. *Massachusetts*, 4 How. U. S. 591; *Poole* v. *Lessee*, 11 Pet. U. S. 185; 2 Herman's Estoppel, pp. 1266, 1274, 1276; *Dibble* v. *Rogers*, 13 Wend. 536; *Edward County* v. *White County*, 85 Ill. 390–401; *Brown* v. *Leete*, 6 Saw. 332; *Hamilton* v. *McNeil*, 13. Grat. Va. 389; *People* v. *Farnham*, 35 Ill. 562; *Milnue* v. *Mayor*, 13 La. 69; *State* v. *Glen*, 18 Nev. 44; *Kellogg* v. *Smith*, 7 Cush. 382; *Gillespie* v. *Cunningham*, 2 Humph. 19; *Barry* v. *Garland*, 6 Fos. 473; *Hanson* v. *Russell*, 8 Fos. 111; *Buris* v. *Fitch*, 76 Cal. 395; *White* v. *Spreckels*, 75 Cal. 610; *Biggins* v. *Champlin*, 59 Cal. 113; *Columbet* v. *Pacheco*, 48 Cal. 395; *Sneed* v. *Osborn*, 25 Cal. 619; *Reed* v. *Farr*, 35 N. Y. 113–16; *Hunt* v. *Johnson*, 19 N. Y. 279; *Baldwin* v. *Brown*, 16 N. Y. 359; *Rockwell* v. *Adams*, 6 Wend. 468; *Boyd* v. *Graves*, 4 Wheat. 513; *Dibble* v. *Rogers*, 13 Wend. 536; *Elliott* v. *Figg*, 59 Cal. 116; Bigelow's Estoppels, 3d ed. 562, *et seq.*, note 1; 2 Herman's Estoppels, 1133, 1139; *O'Connel* v. *Kelsey*, 10 N. Y. 412; *Sheldon* v. *Perkins*, 32 Vt. 550; *Standlee* v. *Burkitt*, 78 Tex. 616; *Wardlow* v. *Harmon*, 45 S. W. Rep. 828.)

XII.   Acquiescence estops a county or a municipal corporation the same as a private party. This acquiescence exceeded the period fixed by statute in which action could be maintained. (Gen. Stats. 3029, 3034, 3649, 3664; *San Francisco* v. *Jones*, 10 Saw. 151; *Ouachita County* v. *Tufts*, 43 Ark. 136; *City of Pella* v. *Scholte*, 24 Iowa, 283; *Rockwell* v. *Adams*, 6 Wend. 468; *Cincinnati* v. *First Pres. Church*, 8 Ohio, 398; *Baldwin* v. *Brown*, 16 N. Y. 359; *H. & T. C. Ry. Co.* v. *Travis County*, 62 Tex. 16; *Hunt* v. *Johnson*, 19 N. Y. 279; *Baker* v. *Johnson Co.*, 33 Iowa, 151–5; *County St. Charles* v. *Powell*, 22 Mo. 525; *Cannon* v. *Stockton*, 74 Cal. 11, 19; *Evans* v. *Erie Co.*, 66 Pa. 223; *Unger* v. *Mooney*, 63 Cal. 595; 2 Herman's Estoppel, pp. 1266, 1276, sec. 1139; *Reed* v. *Farr*, 35 N. Y. 116; *Cannon* v. *Stockman*, 36 Cal. 542; *Cooper* v. *Vierra*, 59 Cal. 282; *State* v. *Yellow Jacket*, 14 Nev. 229; *Houston* v. *Travis County*, 62 Tex. 16; Wood's Limitations, sec. 53.)

XIII.   Acquiescence, for the period of the statute of limitations, commenced to run from 1887, not from the payment of the taxes by the C. P. R. R. Co. in 1895. It began as to the

*locus in quo,* from the time Humboldt ceased to assess the property and Lander county commenced to assess the same. The right acquired by acquiescence, or limitation, need not to have accrued within three or five years, as the case may be, next preceding the commencement of the action, but it may have accrued at any time prior to the commencement of the action. The question is when did acquiescence commence as to the right to assess the railroad. (*Unger* v. *Mooney,* 65 Cal. 595; *Cannon* v. *Stockton,* 36 Cal. 535, 540; *Webber* v. *Clark,* 74 Cal. 11, 19.)

XIV. The surveyor-general being authorized by the latest statute to survey and mark the boundary lines, his determination cannot be collaterally attacked or questioned in this action. (Wells' Res Adjudicata, pp. 233, 342; Bigelow's Estoppel, 1st ed. 144, *et seq.*; *State* v. *Nelson,* 21 Neb. 574; 1 Desty's Taxation, 510; 1 Herman's Estoppel, pp. 519–526; *Secomb* v. *Railroad Co.,* 23 Wall. 109; *McKean* v. *Taite,* 1 Overton, 199; *Beard* v. *Federy,* 3 Wall. 489; *Alviso* v. *United States,* 8 Wall. 342; *People* v. *Collins,* 19 Wend. 56, 58; *Van Steenburgh* v. *Bigelow,* 3 Wend. 42; *Jackson* v. *Crawfords,* 12 Wend. 334; *Dykeman* v. *Mayor of N. Y.,* 5 N. Y. 434; *O'Connor* v. *Frasher,* 56 Cal. 499; 2 Phillips Ev. Cowen and Hill's Notes, p. 162.)

XV. Indeed, establishing boundary lines by an authorized officer is a proceeding *in rem,* and conclusive as to all the world, and cannot be questioned even directly. (Bigelow's Estoppel, 3d ed. pp. 173–175.) The statute of 1887 is plain. It is a familiar rule of construction that the language of a statute is to be given the force intended, and to sustain it and give it operation. (Endlich's Interpretations of Statutes, 265.)

XVI. The legislature having established the boundary lines of the railroad by the statute of 1887, through its authorized officer, the surveyor-general, it is conclusive; the courts cannot interfere. (*Gaines* v. *Thompson,* 7 Wall. 347; *United States* v. *Wright,* 11 Wall. 648; *Johnson* v. *Towsley,* 13 Wall. 72; *Town of Somerset* v. *Town of Clastenbury* 61 Vt. 449; Wells' Res Adjudicata, p. 341; *Stanford* v. *Taylor,* 18 How. U. S. 409; *Jenkins* v. *Trager,* 40 Fed. 727; *United States* v. *Sepulveda,* 1 Wall. 104; *Ellis* v. *Whan,* 91 Ill. 77; Abbott's

Pr. Ev. p. 829; *Allen* v. *Blunt*, 3 Story, 77; *Martin* v. *Mott*, 12 Wheat. 19; *Bates* v. *Ill. C. Ry.*, 1 Black. 204; *Lindsey* v. *Haws*, 2 Black. 554; *United States* v. *Flint*, 4 Saw. 43; *Howland* v. *Town of Springfield*, 43 N. Y. 457; *Fall* v. *Humboldt County*, 6 Nev. 103; *White* v. *Spreckels*, 75 Cal. 610; *In re Pelagano*, 38 Fed. 580; *Hoole* v. *Kinkead*, 16 Nev. 222; *Castro* v. *Hendricks*, 23 How. U. S. 438; 2 Phillips Ev. 162.)

*Robert M. Clarke, H. Warren*, and *L. A. Buckner*, District Attorney of Humboldt county, for Respondent:

I.   Counties are but civil or political subdivisions of the state.   They are created by the sovereign will and power, and their boundaries are established and altered as the sovereign may direct.   The State of Nevada has fixed, by its statute law and the methods provided by that law, the boundary line between the said county of Humboldt and the said county of Lander, and neither one nor both of those counties can alter or change the boundary lines so established. (4 Ency. of Law, p. 343.)

II.   It is needless to cite authority to prove that a power which rests in the whole state cannot be exercised by civil or political subdivisions of the state, or to prove that, by the failure of the tax authorities of the county to collect taxes levied, such failure cannot only bind the sovereign, but can operate to change the boundaries of the county itself.

III.   The joint survey made under the authority of the act of February 26, 1866, by the surveyors of Lander county and Humboldt county, designating and establishing the boundary line between the two counties, becomes, and is, the true boundary line of said county.

IV.   The state has not changed the boundary line of the said county of Humboldt and the said county of Lander, as settled by the joint survey made under the authority of the act of February 26, 1866, and the said Van Lynip line thereafter was, and now is, the true boundary line between the said counties.   The assumption of counsel in their brief— namely, that the surveyor-general was authorized by the state to establish, or in any manner change, the boundaries between the counties of Humboldt and Lander—is wholly unsupported in the law, or in fact behind the law.   The act

of March 2, 1887, cited and relied upon by counsel, does not authorize or empower the surveyor-general to alter existing county boundaries, or in any manner change or interfere with county boundary lines. The act simply imposes it upon the surveyor-general as a duty to "cause to be made a survey of all railroads in this state which extend from one boundary of the state to the other, and determine the number of miles of main track and side track in each of the counties of this state." (Stats. 1887, p. 97.)

V. Under the act in question, the surveyor-general had no power to change existing lines. It was his duty to ascertain where the lines were, and, having so ascertained, should determine the number of miles of road within the counties according to such established and existing lines. It is not reasonable to say, that because the legislature authorized the surveyor-general to find the existing county lines, and ascertain the miles of railroad track within the counties according to such existing lines, that therefore the surveyor-general had authority to destroy old boundary lines, and establish new ones, change, alter, or modify the counties as they were created by the sovereign power, and as they existed at the time his work began.

VI. The taxpayer is to pay once when twice assessed, and the question, as to which county is entitled to receive payment or have the money when paid, is to be settled and determined between the counties themselves, without putting the taxpayer to expense and trouble; the dispute, being between the counties, should be settled by them, and at the expense of the counties, and not by them at the expense of the taxpayer.

VII. The doctrine of prescription and acquiescence has no application to this case. In the first place, as we have already shown, the surveyor-general did not, and could not, establish a "boundary line." He had no power to do so. His act was without authority and void; but, if the surveyor-general had authority to establish the boundary line in question, and did establish it, this would necessarily end all contention, and the doctrine of prescription and acquiescence would have no place. Moreover, as we have already seen, the county of Humboldt had nothing to do with establish-

ing, recognizing, or acquiescing in the supposed boundary line. The state, not the county, establishes the lines dividing the counties. The county cannot establish, or alter, or modify, or, in the least degree, affect the boundary line which has been fixed by the sovereign will and law. It is a most remarkable doctrine that the failure of the assessor of Humboldt county to assess for taxation property within the county of Humboldt, for the period of the statute of limitations—namely, five years—would operate to exempt the property so non-assessed from taxation altogether.

VIII. Except the question of prescription, which, as we have seen, has no place in this case, the suit is decided in favor of Humboldt county by the two cases heretofore decided by the supreme court of this state, namely: *Eureka County* v. *Lander County*, 21 Nevada, p. 444, and *Humboldt County* v. *Lander County*, 22 Nevada, p. 248. In the first of these cases, the court clearly decides that the line established by the joint action of Humboldt county and Lander county, known as the Van Lynip line, is the true boundary line of the two counties, and that the action of the surveyor-general, determining the number of miles of railroad track within the limits of the several counties, could in no manner affect such boundary.

By the Court, MASSEY, J.:

This action was brought to recover certain taxes assessed against $2\frac{35}{100}$ miles of railroad track and right of way belonging to the Central Pacific Railroad Company, which had been paid by the company to the appellant. It is shown by the complaint that the $2\frac{35}{100}$ miles of railroad and track were assessed by the county assessors of both the respondent and appellant for 1895; that the locality of the said property is disputed, the appellant claiming that the same is within its limits, and the respondent claiming said property is wholly within its limits; that the railroad company, having been assessed in both counties, selected and elected to pay to said Lander county the taxes for that year, and did not pay to Humboldt county the taxes assessed against said property during that year. Demand against Lander county for the amount is alleged to have been made, and said demand

refused; and a claim was presented for the same to the board of county commissioners of Lander county within the time limited by law, and disallowed.

The appellant, by way of answer, denied the material averments of the complaint, and set up, as special defense, that the appellant was in open, actual and notorious possession of the railroad track in dispute, and for more than five years previous to the commencement of the action, and previous to the presentment of respondent's claim, it had been in the possession of said property, exercising control and ownership thereof, levying, assessing and collecting taxes thereon, and for more than five years had so done previous to the time the respondent had asserted any right or claim to tax the property.

The facts were all stipulated, and were, in effect, that Humboldt county, prior to the year 1887, taxed all the territory lying west of the Van Lynip boundary line between these counties; that in the year 1887 the surveyor-general established a monument on the Central Pacific railroad track $2\frac{35}{100}$ miles west of the Van Lynip monument on said railroad, and designated the same as marking a boundary line between the counties; that subsequent to and including said year of 1887 the respondent did not assess the $2\frac{35}{100}$ miles of railroad track between the Van Lynip monument and the monument erected by the surveyor-general, until 1893; that since and including the year 1887 Lander county has assessed and taxed the disputed property, and collected the taxes on the same, up to and including the year of 1896, and has assessed the same for the year 1897; that since and including the year of 1893 the respondent has assessed and taxed the disputed property, up to and including the year 1897, but has never collected the taxes, and has at all times assessed and collected the taxes upon all other property between the Van Lynip and surveyor-general's monuments; that the Van Lynip line was established in 1870 by the joint survey of the parties, and was acquiesced in up to the year 1887, when the surveyor-general established the monument above referred to; that the said $2\frac{35}{100}$ miles of railroad are on the west side of the Van Lynip line, and on the east side of the monument established by the surveyor-general; that the railroad com-

pany paid the taxes for the year 1895 to the appellant, and not to the respondent, and also the taxes on the disputed property for the years 1887 to 1896, inclusive, to the appellant; and that the claim of the respondent as set forth in the complaint was duly presented to the board of county commissioners of the appellant for allowance on the 17th day of January, 1896, and was rejected and disallowed by said board on the 4th day of May, 1896.

The court, upon these facts, rendered judgment in favor of the respondent; motion for new trial was interposed and overruled, and this appeal is from the judgment and the order denying the appellant's motion for a new trial.

It will be seen from the stipulation that the boundary line between Humboldt and Lander counties was established under authority of law in 1870 by the joint action of the counties, in which both acquiesced for a number of years; that the line so established was known as the Van Lynip line, and that the $2\frac{35}{100}$ miles of road in controversy were in Humboldt county, as shown by the lines established by that survey.

In 1887 the legislature passed an act requiring the surveyor-general of the state to make a survey of all railroads in the state which extend from one boundary line to the other, and determine the number of miles of main and side track in each of the counties of the state; to place monuments at all points where such railroad crosses any county line, and mark on the sides of such monuments, facing the respective counties, the name of the county and the number of miles of railroad in such county; the number of miles of main and side track, thus ascertained, shall be filed in the office of the secretary of state, and a copy of the same filed with the county recorder of each of the counties through which said railroad extends. The second section of the act provided that when the survey was completed, and the map of the same was filed, as required in section one, it should be *prima facie* evidence in all the courts of this state of the facts therein contained. (Stats. 1887, p. 97.)

It appears, as a matter of fact, that the survey made by the surveyor-general under this statute placed the monument $2\frac{35}{100}$ miles west of the line established by the joint action of

the counties in 1870, and, from that time until the present, Lander county has asserted the right to assess that part of the railroad lying between the monuments, although not claiming or exercising the right to assess the other real property lying between the lines made by the same. At the time of the survey made by the surveyor-general, there was no dispute between the counties as to the true boundary line.

They had lawfully adopted and acquiesced in the line as established by the Van Lynip survey, and, so far as it appears from the facts, it marked the true boundary. Neither was the surveyor-general authorized or directed by the act of 1887 to establish new or other lines, and, from the facts as stipulated, his act in erecting a monument at the point indicated was clearly the result of some mistake not made apparent by the record. Nor was the act intended to change in any respect the boundaries of any of the counties as they already existed.

Furthermore, it was not intended that the survey made by him should be regarded or considered as conclusive; otherwise, the effect of the maps and survey would not have been limited to *prima facie* evidence of the fact recited therein, and, inferentially, authority given to contradict those facts. Neither county regarded and treated the line established by the survey made by the surveyor-general as conclusive, as the stipulated facts show that Humboldt county continued to exercise its right to assess all property other than the $2\frac{85}{100}$ miles of railroad within the disputed territory; and Lander county, for some reason, was satisfied to claim the disputed right to assess the $2\frac{85}{100}$ miles of railroad. It therefore follows that the true boundary line having been established by the joint action of the appellant and respondent in 1870, under authority of law, and acquiesced therein, and the act of 1887 not being an act authorizing the establishment of a new line, or to change the line already established, or to change the boundaries of the counties as they then existed, and the acts to be done by the surveyor-general not being conclusive, or intended to be conclusive, of the facts to be established, within the true scope of the act, and the $2\frac{85}{100}$ miles of railroad being within Humboldt county, they were properly taxable therein under our law.

But it is claimed that the acquiescence of Humboldt county in the exercise of the right of Lander county to assess the property from the years 1887 to 1893, inclusive, estops the respondent from questioning the boundary line fixed and determined by the surveyor-general. The claim is undoubtedly a correct statement of the rule, and should govern in a proper case.

In one of the cases cited by the appellant in support of its claim, in an action to determine a disputed boundary line between counties, it was held that, where the language in an act fixing the boundary line between two counties was so ambiguous as to create a doubt as to where the line was to be established, it would be proper, in solving the doubt, to consider the acts of courts, assessors, collectors of taxes and other officers having duties to perform limited to the respective counties, recognizing and acting upon the assumption for a long time that a given line was the true boundary line. (*Edwards County* v. *White County*, 85 Ill. 392.)

As above stated, the act of 1887 did not authorize any change, or change the boundary line between appellant and respondent, and was not passed for that purpose; and the stipulated facts conclusively show that the line established by the surveyor-general, if it can be said he established a line, was not acquiesced in by Humboldt county, as it is shown that its officers continued, from the time of the survey made by the surveyor-general until after the commencement of this action, to exercise authority and jurisdiction in the disputed territory.

The more important contention as to the right of the respondent to maintain this action presents, to some extent, a new question, under our statute, because of the extraordinary provisions found therein, and not found, so far as we have been able to discover, in the statutes of other states. By the provisions of our revenue law, which are generally adopted throughout the union, the *situs* of property for the purposes of taxation is in the county where the same is situated. (Stats. 1891, p. 146, *et seq.*; Stats. 1893, p. 44.)

It is further provided that where taxes, levied and assessed as required, become delinquent by non-payment, suit may be instituted to recover the same, and the form of the action

and remedy are fully prescribed.    (Stats. 1891, p. 150, *et seq.*)

The right to recover in the action, under the statute, can be defeated by showing that the land is situated in, and has been duly assessed in, another county, and the taxes paid thereon.    (Stats. 1895, p. 39.)

The provision of this section of the revenue law would seem to be sufficient to protect the taxpayer against the injustice of double taxation in cases of this character; but our legislature has created a further defense against suits to recover taxes in actions, by incorporating into the revenue law of 1891 the provision of the separate act of 1873, to the effect that when real property is assessed by the county assessors of two counties, on territory claimed by both, the owner of the real estate assessed is authorized to pay said taxes in either county where he may select, and, in case of suit being brought for the non-payment of taxes in the county in which said suit may be brought, the production of a tax receipt for the current year on said property, signed by the proper officer, although in an adjoining county claiming jurisdiction, of a date prior to the commencement of said action, shall entitle said taxpayer to a dismissal of said suit free of cost.    (Stats. 1891, sec. 12, p. 140.)

If, as claimed, under this act the payment of the taxes to Lander county by the Central Pacific Railroad Company created no liability on the part of Lander county to pay the same to the respondent, who was entitled to assess and collect the taxes under the provisions of the revenue law cited, in the absence of statutory provisions expressly creating such liability and authorizing the action, then it can be said that it is within the power of the county and the taxpayer to change the rule of the statute fixing the *situs* of the property, and the rights and liabilities of the county and taxpayer under other provisions of the same act.    In other words, an absolute right to tax and collect the taxes, and a right of action to recover the same when delinquent for non-payment, given to Humboldt county, can be defeated under the exercise of an assertion of right by collusion.    We do not believe that the legislature intended that the provision of the law should be given this effect, and we do believe that, taking all the provisions respecting the right of action to

recover taxes, it was intended to relieve the taxpayer from harassment by suits for taxes claimed by more than one county, and assessed against the same property, and to leave the counties to settle their rights to the same in an action between themselves.   We believe that this is a fair implication from the statute.   We fully realize the strength of the argument relating to the limited powers of counties, and the strictness of the rule in the manner of the exercise of those powers; but in other cases where rights have been created regarding taxes, and upon no stronger showing, have rights of action been implied.   Thus, where a statute provides for a tax, but is silent as to the method of collection, implication of an intent to give a remedy by suit may be so strong as to be conclusive.   (Cooley on Taxation, p. 435, and authorities cited in note.)

Under another rule of the law must the contention of the appellant fall.   In the case of *Salem* v. *Marion County*, it was held that where there is no privity, statutory or contractual, between a city and a county, where such county had collected money for taxes belonging to the city, an action to recover the same would be sustained upon the principle that an obligation rests upon all persons, natural and artificial, to do justice, independent of any statute, so that, if the county obtain money or property of others without authority of the law, it will be compelled to make restitution. (*Salem* v. *Marion County*, 25 Or. 454; *Chapman* v. *County of Douglas*, 107 U. S. 357; *Pimental* v. *City of San Francisco*, 21 Cal. 362.)

In the case last cited the court used the following language:   " The city is not exempted from the common obligation to do justice which binds the individuals.   Such obligations rest upon all persons, whether natural or artificial.   If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation.   If she obtain other property which does not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor, from the like obligation."

While it might be claimed that these taxes were paid to Lander county under authority of law, yet the retention of the same, under the facts stipulated, was without authority

of law, for it is shown that she had no right to tax the property in the first instance, and the statute authorizing the payment to her by the Central Pacific Railroad Company conferred no such right; hence it can be truly said that the assessment, collection and retention of the money were without authority of law, as her attempted exercise of the right of assessment and collection was without authority of law.

For these reasons the judgment and order appealed from will be affirmed, and it is so ordered.

BELKNAP, J.:  I concur.

BONNIFIELD, C. J., did not participate, he having been attorney in a case between said counties in which the territory in dispute was involved.