STATE OF MINNESOTA v. LAKESIDE LAND COMPANY.[1]

January 21, 1898.

Nos. 10,952—(290).

Mines—G. S. 1894, § 1689—Tax per Ton Unconstitutional.

Laws 1881 (Ex. Sess.) c. 54 (G. S. 1894, § 1689), providing a commuted system of taxation of mining property and products, by the payment of a fixed sum per ton for all ore mined and shipped or disposed of, is invalid, because in conflict with article 9. § 1, of the constitution of the state.

Taxes — Application for Judgment — Defense — Omissions from Tax List.

If the assessment of a taxpayer's land is impartial, equal and fair, compared with the average valuation of other lands generally (except particular omitted or undervalued tracts) in the same taxing district, the fact that certain particular properties have been intentionally and willfully omitted from the tax lists, or intentionally and willfully undervalued, is no defense, either partial or total, to the application of the state for judgment for the amount of taxes levied against the land.

Same—Levy of School Taxes—County Commissioners.

While school taxes for independent school districts are to be extended on the tax lists and collected by the same county officers as county taxes are extended and collected, the county commissioners have nothing to do with "levying" them, in the sense of determining the amount to be raised, or approving the action of the district in that regard.

In proceedings by the state in the district court for St. Louis county against the Lakeside Land Company to enforce the collection of delinquent taxes for 1895, after findings and order for judgment, partly in favor of plaintiff and partly in favor of the objector, the case was certified by Moer, J., to the supreme court. Remanded

[1] Reported in 73 N. W. 970.

and judgment directed to be entered against the land for full amount.

*Geo. E. Arbury,* for the State.

*Walter Ayers* and *Billson, Congdon & Dickinson,* for objector.

MITCHELL, J.

In proceedings to enforce the collection of taxes for 1895 upon certain real estate of the Lakeside Land Company, situated in the city of Duluth, the company objected to the entry of judgment on the ground that the assessors in certain towns in the county of St. Louis, outside the city of Duluth, had intentionally and willfully omitted altogether from the tax lists for 1895 large amounts of valuable mineral lands, and intentionally and willfully assessed large amounts of other mineral properties far below their actual value in money, thereby making its individual assessments a larger proportion of the aggregate taxable property of the county than they should have been, and hence greatly increasing the amount of the taxes levied on its lands beyond what they would have been had all the taxable property been duly assessed and taxed.

It is not claimed that the assessment or valuation for the purposes of taxation placed on the objector's land was unfair or excessive, or that it was unfair or unequal compared with that placed on lands generally, other than the particular mineral lands above referred to. Special objections were made to taxes levied for school purposes for the independent school district of Duluth, created by Sp. Laws 1891, c. 312. One of the objections to this tax was that it had never been levied by the board of county commissioners of St. Louis county.

The court found that mineral lands of the aggregate value of $2,500,000 were intentionally and willfully either entirely omitted from the tax lists for 1895, or, if entered thereon, totally exempted from taxation; also, that part of these lands belonged to mining corporations which had accepted the provisions of Laws 1881 (Ex. Sess.) c. 54 (G. S. 1894, §§ 1689–1691), and paid into the state treasury one cent per ton on all ore mined and shipped or disposed of by them during the year 1895. The court further found that the various assessors and other tax officials had deliberately, inten-

tionally and willfully assessed a large number of other mineral properties, of the fair cash value of $9,500,000, far below their actual and known value in money, to wit, $184,051; also that by reason of these omissions to assess, and these undervaluations, the county taxes imposed upon the lands of the objector were 3.70 per cent. higher than they should have been.

The court further found that the board of county commissioners took no action whatever with reference to the school tax levied by the board of education of the independent school district of Duluth; that the only action taken by any of the officials of the county was that of the county auditor, in extending it on the tax lists, and including the same in the taxes for 1895. Upon these facts the court held that the school tax was valid, but that the objector was entitled to a reduction of 3.70 per cent. on the county tax levied on its property.

The trial judge certifies to this court the following questions, as being of great public importance, and likely frequently to arise:

(1) Is the method of taxing mines and mining corporations provided by Laws 1881 (Ex. Sess.) c. 54, constitutional?

(2) Is a taxpayer in a particular county who would be obliged to pay more than his full share of taxes by reason of the gross and willful undervaluation, or the willful omission from the assessment roll entirely for purposes of taxation, of particular classes of property within the same county, whereby an unequal, unfair and partial assessment has resulted, entitled, under G. S. 1894, §§ 1584, 1588, to a reduction of his taxes to the amount of the injury which he shows himself to have sustained by reason of such unequal, unfair and partial assessment?

(3) Is it essential, in order to constitute a valid levy of taxes for general school purposes in the independent school district of Duluth, that the board of county commissioners of St. Louis county shall levy such tax, by resolution or otherwise, under the provisions of G. S. 1894, § 3693?

1. A comparison of the provisions of the act of 1881 with those of article 9, § 1, of the constitution of the state, will furnish the answer to the first question. The constitution provides that "all taxes to be raised in this state shall be as nearly equal as may be,"

and all property on which taxès are to be levied shall "have a cash valuation and be equalized and uniform throughout the state." The act of 1881 provides that all corporations organized under the laws of this state for the purpose of mining, etc., within this state, may pay into the state treasury annually, in lieu of all taxes and assessments upon the capital stock, personal property and real estate of such corporation, in or upon which real estate such business of mining may be carried on, or which is connected therewith and set apart for such business, the following amounts, viz.: For each ton of copper, fifty cents, and for each ton of iron ore mined and shipped or disposed of, one cent. It would be difficult to conceive of a system of taxation more obnoxious to the constitution. We answer the first question in the negative.

2. The second question requires more extended and careful consideration. In order to arrive at the correct solution of it it may be well to consider: First, the statute and the decisions of this court bearing on its construction; second, the consequences of admitting such a defense, either partial or total, to an application for judgment; and third, what, if any, other remedies a taxpayer has for such omissions or undervaluations. G. S. 1894, § 1584, merely provides who may appear and answer, but is entirely silent as to what defenses or objections may be interposed. The only section containing any provisions as to what defenses may be made is 1588. Aside from previous payment of the tax, or the exemption of the property from taxation, this section contains no affirmative enumeration of the defenses which may be interposed. Its other provisions are to the effect that no omission of any of the things provided by law, etc.,

"Shall be a defense or objection to the taxes appearing upon any piece or parcel of land unless it be also made to appear to the court that such omission has resulted to the prejudice of the party objecting, and that the taxes against such piece or parcel of land have been partially, unfairly or unequally assessed; and in such case, but no other, the court may reduce the amount of taxes upon such piece or parcel."

It must be presumed that the reduction of taxes authorized by the statute is one that will produce equality, and not one that will con-

tinue or increase inequalities. In County v. Batchelder, 47 Minn. 512, 50 N. W. 536, the facts were that the objector's land, which was unimproved, was worth only $2.75 per acre, but was assessed at $4.07, while the average valuation of other lands, improved and unimproved, was $4.44, which was less than half their cash value. It was held that these facts might be set up as a partial defense, and, if established, would entitle the objector to a reduction of the objector's tax so as to correspond with that paid by other land-owners. It is apparent that, when this was done, substantial equality between all taxpayers was attained. In that case the objectors had applied to the county board of equalization for a reduction of the assessed valuation of their lands. Whether this is necessary as a prerequisite to the right to set up such a defense to an application for judgment has never been decided. While the statute has been frequently cited or referred to, we do not recall any other decisions of this court which cast any light upon its construction.

Let us next consider what would be the consequences of permitting such a defense as was interposed, and granting the relief which was asked for, in this case. If the present objector should be the only person who should ask for and be granted such relief, it would only increase, instead of removing, existing inequalities; for in such case the objector would pay less tax in proportion to the value of its property than the other taxpayers in the county, except the owners of the mining properties referred to. On the other hand, if all the other taxpayers should apply for and obtain the same relief, the public would be deprived of a part of the taxes which had been levied for public purposes.

Such a course might result in the bankruptcy of every public treasury, state and municipal, in the entire state. It would not end with county revenue alone, but would extend to every "taxing district," whether state, county, town, city, or school district, in which any property had been willfully and intentionally omitted or undervalued. The state, county, town, city and school district are each a "taxing district" for its particular purposes. It is immaterial whether a tax is levied at a gross sum, or in the form of a percentage on the total assessed value of property in the taxing

district, the percentage necessary to raise a desired sum being fixed with reference to such total assessed value. In either case the omission of taxable property, or its undervaluation, will, in the end, necessarily increase the amount of tax which a particular taxpayer in the district will have to pay. It is therefore apparent that, if the defense interposed in this case is available against an application for judgment, such defenses might be almost numberless, and would result in very serious embarrassment of the public finances. The result might be bankruptcy of every public treasury in the state, without at all removing the inequalities of assessment.

Let us next consider what other remedies a taxpayer has for such omissions and undervaluations. At the outset it should be remembered that the individual taxpayer and the public are not strangers and adversary parties dealing at arm's length, the former owing no duty to the latter. Each individual is himself one of the public, and public officers are as much his agents as the agents of any other member of the public. He has no right to lie back supinely, without availing himself of his opportunities to correct his own private grievances, until matters have progressed so far that they cannot be corrected without great loss to the public. Every taxpayer has the right to appear before the town and county boards of equalization for the purpose, not only of having corrected errors in the assessment of his own property, but also of correcting omissions of the property of others from the tax lists, or its undervaluation. These things can all be corrected, then, so as to produce entire equality among all taxpayers, and without loss or embarrassment to the public. And we must assume that these boards will do their duty, and correct all such omissions and undervaluations, if brought to their attention. A taxpayer can compel the county auditor to enter upon the assessment books for taxation any property which has been unlawfully omitted. State v. Cooley, 62 Minn. 183, 64 N. W. 379.

Again, if any property has been improperly omitted from the assessments, or has been grossly undervalued, for any year or years, there are ample statutory remedies by which it may be afterwards assessed or reassessed, and made to pay the tax which it had previously escaped. Such proceedings, it is true, would not diminish

the taxes of other taxpayers for past years, but they would bring into the public treasury funds which would presumably reduce their taxes in the future; thereby in the end producing practical equality.

In view of all these considerations, we are of opinion that the partiality, unfairness or inequality in assessment which may, under the statute, be interposed as an objection or defense to an application for judgment, refers only to a partiality, unfairness or inequality in the assessment of the objector's land as compared with the general average assessment of other lands in the same district, the correction of which will result in equality among all taxpayers; that, if the objector's land is not assessed above the average valuation of other lands, except particular omitted or undervalued tracts, the fact that particular tracts have been intentionally and willfully omitted or undervalued is not a defense, either total or partial, to an application for a tax judgment. We therefore answer the second question, also, in the negative.

3. The line of argument adopted by the objector in support of the affirmative of the third question is substantially as follows: The act (Sp. Laws 1891, c. 312) creating the independent school district of Duluth provides that it

"Shall be governed by the provisions of the general laws of the state of Minnesota governing independent school districts, not inconsistent with the provisions of this act."

That as the special act makes no provision for the levy of taxes for any purpose, therefore we must refer to the provisions in that regard of the general laws governing independent school districts; that those laws (G. S. 1894, § 3811) provide that "all taxes raised by virtue of this chapter shall be levied and collected in the same manner and by the same officers as county taxes are levied and collected"; and that as G. S. 1894, § 1557, provides that "county taxes shall be levied by the county commissioners," therefore taxes for the purposes of an independent school district must be levied by the county commissioners. It will be noticed that the provision for levying taxes in independent school districts is substantially the same as that (G. S. 1894, § 3693) applicable to common school districts, unless the word "special," used in the latter, has some re-

71 M.—19

strictive effect,—a question which is not important here, although it seems to us that that word merely means special to the particular district.

Counsel's argument is sound, if the meaning which they attach to the word "levy" is correct. But there is fallacy in the argument. School districts, like towns and cities, are territorially, but in no other sense, parts of the county in which they are situated. According to the general policy of our laws, they are, as quasi municipal corporations, and for the purposes for which they are created, co-ordinate with, and not subordinate to, the counties in which they are situated. The counties are created for certain purposes, and these other quasi municipalities for entirely different purposes. Each, within its own particular sphere, manages its own affairs, exempt from the control or supervision of the other, unless otherwise expressly provided by statute. They levy their own taxes and expend them for their own purposes, although, for reasons of convenience and economy, the county officials are generally used as mere ministerial agents to extend the taxes on the tax lists and collect them. They all levy their own taxes in the sense of voting them or determining their amount; but, having no machinery of their own for their collection, they are required to certify their action to the county auditor, whose duty it is to extend them on the tax books as part of the taxes for the current year, and thereafter the county treasurer collects them, the same as other taxes, and pays them over to the municipality to which they belong.

No reason can be assigned why this system should not apply to school districts or independent school districts as well as to other quasi municipalities, or why their power to levy taxes for their own purposes should be subject to the veto or supervision of the county commissioners. And we find nothing in the statute indicating any legislative intent to make them an exception to the general rule. In the case of common school districts, the amount of money to be raised by tax for school purposes is determined by the legal voters of the district. In the case of independent school districts, it may be stated in a general way, without going into particulars, that this same power is vested in the boards of education,

although for certain specified purposes the tax has to be voted by a called meeting of the legal voters.   G. S. 1894, §§ 3806–3809.

The word "levy" has different meanings, according to the object to which it is applied.   As applied to taxes, it sometimes means to raise, to exact by authority of government, or to determine by vote the amount of tax to be raised.   It is in this sense that towns, cities and school districts levy taxes.   In other cases it is used with reference to the mere ministerial or executive acts of extending them on the tax books, and collecting them.   Our own statutes contain numerous instances of the use of the word in these different senses.   It is clearly in this latter sense that the word is used in both sections, 3693 and 3811.   When the statute provides that school taxes shall be levied in the same manner and by the·same officers as county taxes are levied and collected, it has reference merely to the machinery and agencies by which such taxes shall be extended on the tax books and collected.   We therefore likewise answer the third question in the negative.

Counsel for the landowner in their briefs discuss other objections to the validity of the school tax, but, as no such questions have been certified by the trial judge, we cannot consider them.   Morrison v. St. Paul, 42 Minn. 451, 44 N. W. 982;   State v. St. Croix, 49 Minn. 450, 52 N. W. 44;   State v. Moffett, 64 Minn. 292, 67 N. W. 68.   The result is that the court was right in holding the school tax valid, but in error in holding that the objector was entitled to a reduction of its county taxes.

Cause remanded, with directions to the court below to amend its conclusions of law in accordance with this opinion, and to order judgment against the land for the full amount of both taxes.