STATE v. WEST DULUTH LAND COMPANY.

February 2, 1899.

Nos. 11,365—(26).

**Taxes—Unfair Assessment of Real Estate not a Defense.**

In proceedings under the provisions of G. S. 1894, c. 11, to enforce the collection of taxes on real property remaining unpaid and delinquent, it is no defense that the objector's property was assessed at more than twice its value in money, or what it would have sold for in money. Nor is it a defense that such property, suburban in its character, was so assessed, while central business property in the same taxing district was systematically assessed at not more than half its money value, and intervening property was assessed from half to its full true value. The taxpayer's remedy for official misconduct of this kind is to appear before the town, or city, or county board of equalization, and there attempt to correct the wrong.

**City of Duluth—Park Tax—Sp. Laws 1891, c. 54, § 13.**

Sp. Laws 1891, c. 54, § 13, which section authorizes the park board of the city of Duluth, an appointed body, annually to determine the amount of tax to be levied in said city for park purposes, not exceeding such sum as can be raised by a tax of one-tenth of one per cent. upon each dollar of taxable property, is not unconstitutional.

**Same—Estimate of Tax Required—Provision Directory.**

The provision in said section requiring the park board to certify the amount determined by it to be necessary to be levied as a tax to the county auditor on or before October 1 of each year is, in so far as the time is concerned, merely directory. The certificate here questioned was made October 14. *Held* to be a sufficient compliance with the statutory requirement.

**County Bonds—Laws 1895, c. 289—Sp. Laws 1877, c. 63, § 10.**

The effect of Laws 1895, c. 289,—a general law relating to the issuance of county bonds,—was to repeal, by implication, the prohibition as to any subsequent or further issue of bonds by the county of St. Louis, found in Sp. Laws 1877, c. 63, § 10. It was further legislation on the subject, and therefore removed the inhibition.

### Same—Sale at Par—Commission Paid to Broker.

Under the provisions of Laws 1895, c. 289, there were issued by the county above mentioned bonds of the face value of $140,000, and the board of county commissioners entered into a contract with a broker, in which it was stipulated that he should receive 10 per cent. of such face value as compensation in full for lithographing and printing the blank bonds, and for all services in connection with and incident to their sale, including all sums paid by him for legal advice and services. As a matter of law it cannot be held on these facts alone that the agreed compensation was a violation of section 4 of said chapter 289, which forbids a sale of bonds at less than face value.

### Independent School District of Duluth—Sp. Laws 1891, c. 312—Const. art. 4, § 33.

Sp. Laws 1891, c. 312, entitled "An act for the formation and to fix the boundaries of the independent school district of the city of Duluth," etc., was not obnoxious to the provisions of section 33 of article 4 of the constitution, as it existed at the time of the enactment. It created a school district, with boundaries coincident with those of the city. The entire chapter could have properly been incorporated into the city charter as providing merely for one of the executive branches or departments of the municipality. It was legislation for a city.

### Same—Title of Act.

The subject of the act was expressed in its title.

### Levy of School Tax—Resolution of Board of Education—G. S. 1894, §§ 3806–3809.

As authorized in the act, the board of education passed a resolution in which a total amount was levied as a tax for school purposes for the current year; but the total amount was apportioned to three distinct funds, namely, general, building and sinking. *Held*, that it sufficiently appeared that the levy designated as "general fund" was for the maintenance of schools, and authorized by G. S. 1894, § 3809; that the levy designated as "building fund" was for the erection of school houses, or the purchase of sites, authorized by sections 3806 and 3807; and that the levy specified as a "sinking fund" was made to meet the principal and interest of the indebtedness of the district as it matured, and was authorized by section 3808.

### Provisions not Mandatory.

Many regulations are made by statute and designed for the information of assessors and officers, and intended to promote method, system and uniformity in the mode of proceeding, the compliance or noncompliance

with which does not, in any respect, affect the rights of taxpaying citizens. These may be considered directory. Officers may be liable for not observing them, but their observance is not a condition precedent to the validity of the tax.

## Taxes—Violation of G. S. 1894, §§ 3802, 3807, 3809, not a Defense.

That the provisions of G. S. 1894, §§ 3802, 3807 and 3809, prescribing to some extent the manner in which the county auditor shall be notified of the amount of a tax levy made by a board of education, and the method of certifying such amount, have not been strictly complied with, is, because of the language found in sections 1586, 1588, no defense in proceedings of this nature.

Proceedings in the district court for St. Louis county to enforce the collection of taxes on real estate for the year 1896, delinquent and unpaid on the first Monday of January, 1898. West Duluth Land Company filed an answer, wherein it objected to entry of judgment against lands owned by it on various grounds, and a trial was had before Moer, J., who found in favor of plaintiff. On application of the objector, the court certified to the supreme court the following points or questions:

First. (1) Whether it is any defense, either in whole or in part, to proceedings to enforce the collection of a tax, that the property in question was assessed at more than twice its full value in money, and more than twice what it would have sold for, at the time of such assessment, at a fair and voluntary sale for cash. (2) Whether it is any defense in these proceedings, either in whole or in part, that while the property in question, being suburban property, was systematically assessed at its full value in money and more, central business property in the same city was systematically assessed at not more than half its value in money, and intervening properties were assessed at various amounts between 50 and 100 per cent. of their true value in money.

Second. (1) Whether Sp. Laws 1889, c. 401, § 13, as amended by Sp. Laws 1891, c. 54, is constitutional. (2) Whether the park board of Duluth has any power to certify to the county auditor, after October 1, the amount of their annual levy for park purposes, and whether the county auditor has power to extend upon the tax list taxes so certified.

Third. (1) Whether the effect of Sp. Laws 1877, c. 63, § 10, was to deprive the county of St. Louis, and all its officers, of the power to levy any tax to pay the principal or interest of any bonds issued under the authority of that act. (2) Whether, if such was the effect, Laws 1895, c. 289, § 13, or any other general act, repealed said section 10, there being no express repeal of such section. (3) Whether, under the facts found by the court, the road bonds in question were sold at less than par.

Fourth. Whether, if the tax for the road bonds was unauthorized, the entire county levy is void, because part of the levy was for an unauthorized, and therefore an illegal, purpose.

Fifth. (1) Whether the common council of Duluth can levy the municipal taxes after October 10. (2) Whether the county auditor has power to extend upon the tax list taxes levied and certified to him by incorporated cities after October 10.

Sixth. (1) Whether Sp. Laws 1891, c. 312, is constitutional. (2) Whether if chapter 312 is unconstitutional, the corporation thereby created is now a legal corporation by virtue of G. S. 1894, § 3648. (3) Whether, if such corporation is now a legal corporation, and chapter 312 is unconstitutional, such corporation has power to levy the taxes in question. (4) Whether, if the corporation has power to levy the taxes in question, such taxes were properly levied and extended upon the tax list. This involves the questions: (a) Whether a levy for a "general fund" and a "sinking fund" is for a purpose known to, and therefore authorized by, the law. (b) Whether the letter from the clerk of the school board to the county auditor was such a certification of the tax levy as to authorize the extension of this levy upon the tax list by the county auditor. (c) Whether a tax levy for building purposes must not, under G. S. 1894, § 3807, be certified by the chairman and secretary of the school board to the county auditor; and if so, whether the county auditor had any authority in this case to extend upon the tax list so much of the tax levy as is for building purposes. Affirmed.

*Billson, Congdon & Dickinson,* for objector.

The overvaluation was intentional. Const. art. 9, § 1, forbids collection of a tax which is intentionally unequal. Sanborn v.

Commissioners, 9 Minn. 258 (273). Property must be taxed "according to its true value in money." Const. art. 10, § 3. By G. S. 1894, §§ 1514, 1536, 1557, 1558, the legislature has aimed to secure equality in taxation. When an omission has produced an unequal or unfair tax, it is pro tanto a defense. G. S. 1894, §§ 1580, 1584, 1588. An assessment made with intentional violation of the law is bad. County of Otter Tail v. Batchelder, 47 Minn. 512, 517; In re Cloquet Lumber Co., 61 Minn. 233; 236. See Houghton v. Austin, 47 Cal. 646.

Sp. Laws 1889, c. 401, § 13, as amended by Sp. Laws 1891, c. 54, is unconstitutional. Section 13 empowers the park board to determine the amount of the tax. The body having power to determine the amount of the tax, and to certify it to an official who is compelled to extend it on the tax list, is the body which levies the tax. Board v. Brown, 12 Utah, 251; State v. Lakeside Land Co., 71 Minn. 283. The power to determine the amount of a tax is legislative. Cooley, Taxn. c. 2; U. S. v. New Orleans, 98 U. S. 381, 392. Power to tax, except when authorized by the constitution, cannot be delegated to an administrative officer. State v. Young, 29 Minn. 474, 551; State v. Simons, 32 Minn. 540, 543; Anderson v. Manchester Fire Assur. Co., 59 Minn. 182, 195; State v. Sullivan, 67 Minn. 379, 384. The power may be delegated to municipal organizations. Const. art. 11, § 5. But the power may be exercised only by the legislative department of the municipal organization. State v. Lee, 29 Minn. 445, 450; Harrington v. Town of Plainview, 27 Minn. 224, 230; Cooley, Taxn. (2d Ed.) 63, 65; McCabe v. Carpenter, 102 Cal. 469; State v. Mayor, 103 Iowa, 76; People v. Common, 28 Mich. 228; Hinze v. People, 92 Ill. 406, 415; People v. Mayor, 51 Ill. 17; Parks v. Board of Commrs., 61 Fed. 436; Board v. Abbott, 52 Kan. 148; Const. art. 2, §§ 3, 4, 5; Id. art. 2. State v. District Ct. of Hennepin Co., 33 Minn. 235, 243, is not opposed to this position. Sp. Laws 1891, c. 54, § 13, requires the tax to be certified on or before October 1. A certificate made after this date is void. Mix v. People, 72 Ill. 241; First v. Cook, 77 Ill. 622; Finnegan v. Gronerud, 63 Minn. 53.

Sp. Laws 1877, c. 63, § 10, deprived the county of power to levy a tax to pay principal of any bonds not issued under that act. The

language of the act leaves no room for construction. State v. Rodman, 58 Minn. 393, 399. Laws 1895, c. 289, did not repeal that act. Power to create a debt carries by implication power to levy a tax to pay the debt, unless that power is limited. U. S. v. New Orleans, supra. See State v. Board, 39 N. J. L. 660. When the taxing power is limited, such limitation rebuts the inference of a grant of power to levy an additional tax to meet the authorized debt. Corbett v. City, 31 Ore. 407; U. S. v. County of Macon, 99 U. S. 582, 590. The act of 1895 is general, and did not affect that of 1877. State v. McCardy, 62 Minn. 509, 517. A general act made applicable to any county does not repeal by implication a prior special act, on the same subject-matter, affecting one county, though it expressly repeals all acts inconsistent with it. State v. Archibald, 43 Minn. 328, 331. See also Moore v. City of Minneapolis, 43 Minn. 418; State v. Harris, 50 Minn. 128, 135; State v. Egan, 64 Minn. 331. The bonds were sold at less than par, and being issued in violation of the act, are void, unless in the hands of innocent holders. Gould v. Town, 23 N. Y. 456, 459; Starin v. Town, 23 N. Y. 439, 446; City v. Butcher, 3 Kan. 104.

Part of the levy being for an unauthorized purpose, the whole is void. Cooley, Taxn. 296; Culbertson v. Witbeck Co., 127 U. S. 326, 335; Bailey v. Haywood, 70 Mich. 188; Haley v. Whitney, 53 Hun, 119, 122; Hewitt v. White, 78 Mich. 117; Drake v. Ogden, 128 Ill. 603. Thus a tax levy which exceeds the statutory limit is void. City v. Raley (Tex. Civ. App.) 32 S. W. 183; Hubbard v. Brainard, 35 Conn. 563, 568; Libby v. Burnham, 15 Mass. 144; Blackwell, Tax Tit. (4th Ed.) 179. And the collection of the whole will be enjoined. Worthen v. Badgett, 32 Ark. 496; Porter v. Rockford, 76 Ill. 561, 564. In Minnesota the statute makes the levy good up to the limit.

The council may not levy the taxes after October 10. G. S. 1894, § 1557; Wells v. Commissioners, 77 Md. 125; McLaughlin v. Thompson, 55 Ill. 249; Free v. Scarborough, 70 Tex. 672; Standard v. Independent, 73 Iowa, 304; Brown v. Hogle, 30 Ill. 119; Parker v. Overman, 18 How. 137, 142; Watson v. Campbell, 56 Ark. 184; Powers v. Larabee, 2 N. D. 141; Finnegan v. Gronerud, supra.

Sp. Laws 1891, c. 312, is unconstitutional. Const. art. 4, § 33. This provision prohibits special acts of incorporation. Brady v.

Moulton, 61 Minn. 185; State v. Wiswell, 61 Minn. 465. The act creates a corporation, and does not grant additional powers to an existing corporation, as in Green v. Knife Falls Boom Corp., 35 Minn. 155. But if it adds to the powers of an existing corporation, it is unconstitutional, because the subject is not expressed in the title. Mississippi & R. R. Boom Co. v. Prince, 34 Minn. 79, 85. The taxes were not properly levied and extended on the tax list. The levy was void as to the "general fund" and the "sinking fund," because such funds are unknown to the law. Chicago v. People, 163 Ill. 616. The letter from the clerk of the board to the county auditor was not such a certification as to authorize the extension of the levy. A certificate in proper form is a prerequisite to the power of the auditor to extend the tax. People v. Smith, 149 Ill. 549; Chicago v. People, supra. The certificate was required to be an attested copy of the record, because there can be no valid levy without a record of it. Moser v. White, 29 Mich. 59; O'Neil v. Tyler, 3 N. D. 47; Hawkins v. Intendant, 63 Ga. 527, 530.

*George E. Arbury*, for plaintiff.

*McCordic & Crosby*, for Board of Education of the City of Duluth.

COLLINS, J.[1]

In proceedings to enforce the collection of taxes on real property in the county of St. Louis remaining delinquent and unpaid for the year 1896 (G. S. 1894, c. 11), the West Duluth Land Company, whom we will call the "objector," filed an answer, in which questions were raised by it as the owner of several tracts of land against which judgments were sought. A trial was had by the court, and upon its findings of fact it ordered, as a conclusion of law, that judgments be entered as demanded. Thereafter the court certified several points or questions, raised by the objector, as provided for in G. S. 1894, § 1589, which we will state in our own language, and consider seriatim.

1. Was it any defense that the objector's property was assessed at more than twice its value in money, and more than twice what it would have then sold for at a fair cash sale? And was it any de-

[1] START, C. J., took no part.

fense that the property, suburban in its character, was systematically assessed at more than its full value in money, while central business property was systematically assessed at not more than half its money value, while intervening property was variously assessed at from half its true value up to such true value?

In the recent case of State v. Lakeside Land Co., 71 Minn. 283, 73 N. W. 970, certified up as this was, it was held, after a very extended and careful consideration of the point (fully evidenced by the exhaustive and complete opinion), that:

"If the assessment of a taxpayer's land is impartial, equal and fair, compared with the average valuation of other lands generally (except particular omitted or undervalued tracts) in the same taxing district, the fact that certain particular properties have been intentionally and wilfully omitted from the tax lists, or intentionally and wilfully undervalued, is no defense, either partial or total, to the application of the state for judgment for the amount of taxes levied against the land."

The only difference between the cases is that in the one from which we have quoted one-third of the taxable property of this same county was either omitted from assessments, or undervalued, through the intentional and unlawful manipulations of the assessors and other tax officials, and, as a consequence of these wilful omissions and undervaluations, the objector's lands had to bear much more than their fair share of the burdens of taxation; while in this case a systematic method of assessing this objector's lands, suburban in character, at more than twice their value in cash, and at the same time systematically assessing central business property in the same taxing district at not more than half its cash value, resulted in the same thing,—the imposition upon this objector's lands of more than their fair share of the burden. The result was the same, and, if this be so, the unfair and illegal methods adopted to accomplish it cannot affect the owner's rights or remedies. They would be the same in each case. And the consequence of permitting a defense based upon these facts would be the same.

The objector here made no offer to show that its property was assessed on a greater valuation than other suburban property, and, according to its offer, central business property was valued for as-

sessment purposes at half its value or less. If no other property owner objected on this ground, and the relief demanded here had been granted, it is certain that this objector's property would have been taxed upon a greatly reduced valuation, as compared with other suburban property, and that the central business property mentioned would have been taxed upon the unequal valuation of which complaint is made. As was said in the Lakeside case, the inevitable result would be to increase existing irregularities, instead of removing them. This objector would pay a smaller tax in proportion to the real value of its property than all other taxpayers, except such as owned the business property referred to.

We conclude, as indicated in the opinion in the case just mentioned, that the taxpayer has a remedy for just such official misconduct as that alleged in the offer upon which is based the question now under consideration, and that he must attempt to correct a grievance of this character before tax proceedings reach the time for answering. It is his right to appear before the town, city or county board of equalization if he wishes to correct errors as to the assessment of his own property, and also if he feels that he has been aggrieved in the omission of property belonging to others from the assessment rolls, or that such property has been undervalued. Again quoting from the Lakeside case, at page 288:

"These things can all be corrected, then, so as to produce entire equality among all taxpayers, and without loss or embarrassment to the public. And we must assume that these boards will do their duty, and correct all such omissions and undervaluations, if brought to their attention."

The conclusion in that case was that the partiality, unfairness or inequality in an assessment which may, under the tax law, be interposed as a defense to the entry of judgment, refers only to a partiality, unfairness or inequality in the assessment of the objector's land as compared with the general average assessment of other lands in the same district, the correction of which will result in equality among all taxpayers. Such was not the case which the counsel for the objector offered to make out by proof. The first question is answered in the negative.

2. The second point certified raises: First, the question of the constitutionality of Sp. Laws 1891, c. 54, § 13, and, second, the question, if this law is valid, could the board of park commissioners, after October 1, legally certify to the county auditor the amount of tax to be levied?

The constitutional question is whether, under the fundamental law, the board could be empowered by the legislature to determine the amount of tax to be levied each year for park purposes. Under the terms of this section the board is authorized to determine the amount, but it cannot exceed the sum which may be raised by a tax of one-tenth of one per cent. upon each dollar of valuation. That an exercise of the power to tax is legislative, and that under this section this power was conferred upon the board, is admitted; and it is also admitted by counsel for the objector that the power to determine the amount of taxes to be levied for park purposes might be conferred by the legislature upon one or more legislative representatives of, and selected by, the people of the municipality, and that this board might act in respect to the amount if their action was consented to, or approved, by the legislative body of the city, the common council. So the contention of counsel finally resolves itself into the claim that under the constitution the legislature is unable to delegate its legislative power to an administrative and appointive body or agency of a municipality, such as the park board, the members of which are appointed, not elected.

Passing by the position of counsel for the state that, when the legislature itself fixed the maximum limit of taxation for park purposes at one-tenth of one per cent. of the valuation, it legislated for itself on this subject, and that this fact distinguishes the present case from all of the cases cited by the objector's counsel, we are of the opinion that they are in error when (conceding that the power in question may be delegated to an elective body selected by the citizens of the municipality) they assume that the legislative power cannot be conferred upon an appointed body of the same municipality. We are not advised of any constitutional provision which forbids the exercise of legislative power by an appointive agency. In a state with a constitution not distinguishable from our own, so far as this point is concerned, it has been held directly

75 M.—30

that the state could exercise its supreme power of taxation through an agency appointed by the executive under legislative authority. Burgess v. Pue, 2 Gill, 11; Mayor v. State, 15 Md. 376. Practically the same thing was held in State v. District Ct. of Hennepin Co., 33 Minn. 235, 22 N. W. 625. And it is a well-known fact that this power has often been conferred upon, and is annually exercised by, appointive bodies or boards in many of the municipalities of this state.

By the terms of said section 13 the park board is required annually to certify to the county auditor, on or before October 1, the amount required to be levied as a tax for park purposes. The amount now in question was not certified until October 14, and was then, in form, extended by the auditor upon the general tax lists, which lists he should have completed on or before the first of January thereafter. G. S. 1894, §§ 1560, 1562. This statutory provision as to the time for certifying is merely intended for the guidance of the park board, and is designed to insure an orderly and prompt performance of a public duty. It is simply directory, and a failure to certify on or before October 1 does not affect the taxpayer, injuriously or otherwise. See Kipp v. Dawson, 31 Minn. 373, 381, 17 N. W. 961, and 18 N. W. 96; Banning v. McManus, 51 Minn. 289, 53 N. W. 635. An omission to certify on or before the last day mentioned cannot be a defense to the proceedings, because it cannot affect the substantial merits, nor could it have resulted to the prejudice of this or any other objector. The questions raised on the second point are answered—First, the statute in controversy is constitutional; and, second, the certification was within time.

3. The third point certified is as to the effect of Laws 1895, c. 289, under which county bonds have been issued, upon the very drastic provisions found in Sp. Laws 1877, c. 63, § 10, and also as to the effect of the findings of fact respecting the sale of the bonds just mentioned.

In 1877 the financial condition of St. Louis county was such that radical measures became absolutely necessary, and a refunding scheme led to the enactment of chapter 63, supra. Section 9 seems to have been drawn with a view of covering the ground, but by the terms of section 10 it was made unlawful for the county officials to

levy any tax to pay either principal or interest "of any bonds not issued under the authority of this act," until further legislation thereon. The question really is whether, by implication, the provisions of chapter 63, supra, which forbid the issuance or payment of other than the refunding bonds, were repealed by the general law of 1895. This law, which expressly authorized any county in the state (making no exceptions) to issue bonds to build roads and bridges, was clearly hostile to the special law, previously enacted, which prohibited the further issuance of any bonds by the county therein named. These laws cannot be harmonized, and, as a consequence, the special law stands repealed. Again, the inhibition found in the 1877 law was only operative "until further legislation" upon the subject of county bonds. In the statute of 1895 we find further legislation upon this subject, and this removed the inhibition.

Under the provisions of section 4 of chapter 289, supra, a sale of the bonds issued thereunder at less than par value was forbidden. The bonds now under consideration, $140,000 in amount, were turned over to a broker for sale under a written contract with the board of county commissioners. In this contract it was stipulated that the broker should pay for lithographing and printing the blank bonds, for legal advice and services, and all other expenses incident to a sale, for which and as compensation in full, he was to receive the sum of $14,000,—10 per cent. of the face value of the bonds sold. On these facts we are asked to hold that there was a plain violation of section 4, and that the bonds are void. There might be cases where the facts would very conclusively show that an agreed compensation of 10 per cent. for the sale of bonds was a palpable evasion of such a section, but we have no such case before us. We cannot say, as a matter of law, that under the conditions of this contract there was a violation of section 4, which forbids a sale of the bonds at less than par value.

We hold, as to the third point, that, in so far as the question is raised by the answer herein, the bonds issued under the provisions of Laws 1895, c. 289, are valid, and the tax levy for the payment of principal and interest of the same may be collected in these proceedings.

4. The fourth point certified is disposed of by the conclusion reached in the preceding subdivision of this opinion, and the fifth is fully covered in the latter part of the second subdivision, in which we held that the requirement as to the time when the amount of the tax levy for park purposes had to be certified to the county auditor is simply directory.

5. In the sixth point presented by the certification of the court below several questions are raised, but all can be disposed of by considering the objector's claim that Sp. Laws 1891, c. 312, entitled "An act for the formation and to fix the boundaries of the independent school district of the city of Duluth in St. Louis county, Minnesota, and to provide for the election of members of the board of education of said district and define the powers of the board," is unconstitutional; and the further claim, if that just noted is not sustained, that the tax which was attempted to be levied for the purposes of this school district was not properly levied or extended on the tax lists.

At the time of the enactment of chapter 312, supra, which was approved and took effect April 14, 1891, the state constitution (subdivision 7, § 33, art. 4) prohibited special or private laws "for granting corporate powers or privileges, except to cities." This subdivision forbade the granting of corporate franchises—that is, franchises by acts of incorporation—except to cities, and so the inquiry is, was a prohibited franchise granted when the act was passed? If so, the law must be held to be within the inhibition. The act is somewhat peculiarly worded, and seems to have been introduced as house file No. 1,251. The reasons for some of its provisions may be easily understood by reference to Sp. Laws 1891, c. 56, which was an earlier bill, being house file No. 994, and provided for an extension of the limits of the city of Duluth by the annexation of two villages and some adjacent territory. A part of the territory described in the first section was then included in the city. That part of said territory exempt from the operation of the act until January 1, 1893, or until an earlier day, if the legal voters of the village so elected, was the village of Lakeside. A part of the territory described in section 2 was then the village of West Duluth, and all of said territory, it was provided, should become a part of

the city January 1, 1894. A part of the territory described in section 3 was then the village of New Duluth, and all of this territory was to be annexed to and become a part of the city January 1, 1895. This act was approved and took effect April 2, 1891,—12 days prior to the day upon which chapter 312 became a law.

The fact that such an act as house file No. 994 (chapter 56) had been introduced into the legislature, and was in the process of being passed, explains why house file No. 1,251 (chapter 312) should include, as it did, all of the territory within the city limits at the time of its introduction, and also all of the territory to be annexed under the provisions of said chapter 56. But it did not describe or include any other territory, although provision was made generally (section 1) for territory which might be afterwards brought within the city limits. So the fact was that prior to the passage of chapter 312 all of the territory therein described as comprising the school district was then actually within the city limits, or was thereafter, and upon certain fixed days, to be within these limits through the operation of a previously enacted law. To express this in different language, the boundary lines of the school district were exactly those of the city as its boundaries had been prescribed in chapter 56, several days before. And the legislation was in fact for a city. Chapter 312 simply provided that the city of Duluth should be an independent school district, its board of directors to bear the corporate name of "The Board of Education of the City of Duluth." Provision was made for the annual election of members of the board from among the qualified electors of the district, and, as a consequence, of the city; and their duties and powers were prescribed. This entire act could have properly been made a part of the city charter, for under it the schools of the city are nothing but one of its executive departments.

City charters in which were provisions for the organization and government of school districts, with boundaries coincident with those of the municipality, were frequently enacted in this state, until the passage of special laws for such incorporations was prohibited by the constitutional amendment of 1892. Such provisions are germane to the general subject—that of creating a municipal corporation. See City of Winona v. School District, 40 Minn. 13,

41 N. W. 539; State v. La Vaque, 47 Minn. 106, 49 N. W. 525. And under such charters schools within these districts have been, and now are, treated and managed as an executive branch or department of the municipal government. That chapter 312 was nominally an independent act, and not in terms made a part of the city charter, through an amendment or otherwise, cannot affect the fact that the powers and privileges therein granted and conferred were to a city and for city purposes, and therefore that there was no infringement upon the constitution as then framed.

There is nothing in the further claim of counsel that the subject of the act was not expressed in the title, and therefore unconstitutional.

As before stated, the further claim is made, on this point, that the taxes attempted to be levied for school purposes were not properly levied or extended.

The first proposition is that the levy was in fact made for purposes unknown to the law. The resolution in words apportioned the total amount levied to three funds, namely, general, building, and sinking, a stated sum to each, and it is insisted that no levy can lawfully be made for the purpose of creating either a general fund or a sinking fund. The board was expressly authorized by statute annually to determine the amount of tax to be raised for the purpose of keeping the schools in operation, not less than twelve nor more than forty-four weeks each year. G. S. 1894, § 3809. Excepted from this was such amount as it might be necessary to raise for the erection of school houses and the purchase of sites. By sections 3806 and 3807 the voters of the district were authorized to determine the amount of money necessary to be raised for the erection of buildings or the purchase of sites, and the board was authorized, when such determination was made, to levy the required tax, not exceeding eight mills on the dollar in any one year; and by the eleventh subdivision of section 3808 it has been made the duty of the board to provide for the prompt payment at maturity of the principal and interest of any indebtedness of the district by levying taxes sufficient to meet the same. And it was quite clear from the resolution that the board was levying taxes for the three distinct purposes authorized by the sections above mentioned, and,

further, that the classification adopted was a proper one. The levy specified as "general fund" was for the maintenance of schools (section 3809); that mentioned as "building fund" was for the erection of school houses or the purchase of sites (sections 3806, 3807); and that distinguished as the "sinking fund" was a levy to meet the principal and interest, as it matured, of the indebtedness of the district (section 3808). Each item thus designated was exclusively for the purpose named, which was sufficiently definite for all practical purposes. We think any one advised of the classes of taxes which might be lawfully levied would have no difficulty in understanding the resolution.

The second proposition is that the letter from the clerk of the board to the county auditor was not a proper certification, and was insufficient to authorize the latter to extend the school tax upon the tax lists. The letter in question was of date October 6, and advised the county auditor that at a regular meeting of the board "the following resolution was unanimously passed." Then followed a copy of the resolution before mentioned. This letter was signed by the clerk pro tem. of the board, and its seal was attached. The duties of the clerk are prescribed in section 3802, and, among other things, he is to

"Furnish to the county auditor, on or before the tenth day of October in each year, an attested copy of his record, stating the amount of money voted to be raised by the district, for school purposes, at any annual or special meeting, or by the board of education."

It is the position of counsel that this provision of the section is mandatory, both as to the person who is to furnish the auditor with the information and the precise manner in which this is to be done; and that it not only imposes a duty upon the clerk, but strict compliance is a prerequisite to the extension of a valid tax. In section 3807 we find a special provision as to the amount of tax levied for the erection of buildings and the purchase of sites. Such amount is to be certified to the auditor by the chairman and secretary of the board; and in section 3809 we find that it is the duty of the board itself, on or before October 10 of each year, to "make known" to the auditor the amount of tax determined upon for

general purposes; that is, for ordinary expenses. There seems to be no special provision on this subject relating to taxes levied to meet existing indebtedness not yet due,—the indebtedness mentioned in the eleventh subdivision of section 3808. These various provisions as to certifying to the auditor do not harmonize, and it follows, if no other reason existed, that all are not mandatory. If all are not of this imperative nature, which one is, if either? We are of the opinion that the rule to be applied as to the manner of performing the act of advising or notifying the auditor of the amount of the tax levy is that so thoroughly established and hereinbefore cited with reference to the time within which an act is to be performed. A disregard of the exact method prescribed by statute for the performance of the act in question cannot injuriously affect the rights of the taxpayer. It is of no consequence to him whether an attested copy of the resolution be forwarded to the auditor, or a letter containing a simple copy, with the information that it is a copy. As was said in Torrey v. Inhabitants, 21 Pick. 64, at page 67:

"Many regulations are made by statute, designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding, the compliance or noncompliance with which does in no respect affect the rights of taxpaying citizens. These may be considered directory; officers may be liable to legal animadversion, perhaps to punishment, for not observing them, but yet their observance is not a condition precedent to the validity of the tax."

See, also, Sutherland, St. Const. § 451; 23 Am. & Eng. Enc. 458, and cases cited.

Finally, upon this point, the law especially provides that on a trial of the issues made by an answer in tax proceedings all technicalities and matters of form shall be disregarded, and also that no omission of any of the things by law provided in relation to the assessment or levy of taxes or of anything required to be done prior to the filing of the tax lists with the clerk of court, shall be a defense, unless it is also made to appear that such omission has resulted to the prejudice of the objector, and that there has been, in addition, a partial, unfair and unequal assessment. G. S. 1894,

§§ 1586, 1588. The objector here could not have been prejudiced by means of the course pursued by the board of education, or its clerk, when the auditor was advised of the amount of the tax levy.

On the sixth point we answer that, in so far as the question has been presented, said chapter 312 is not opposed to the constitution; and, further, that the taxes involved were properly levied and properly extended on the tax lists.

This disposes of the case, the result being that judgment must be entered as ordered in the court below.

