# W. G. REDDINGIUS COMPANY v. A. ENKEMA.[1]

July 13, 1923.

No. 23,349.

**Action for money had against officer of corporation.**

1. The legal principle which supposes a man to have promised to do that which it is certain he ought to do may be given effect in an action for money had and received. Such an action will lie to recover money paid to himself as a salary by an officer of a corporation who failed to perform a contract with the corporation requiring him to devote his full time and best efforts to its business.

[1] Reported in 194 N. W. 946.

**Verdict sustained by evidence.**

2. The evidence warranted the jury in finding that defendant did not devote his full time and best efforts to the business of the corporation.

**Estoppel against defendant asserting payment was voluntary.**

3. Having drawn all the checks for the payment of his salary himself, defendant was not in a position to assert that the corporation had paid him voluntarily and could not compel him to refund the money he had received.

**Counterclaim rightly withdrawn from jury.**

4. Defendant's counterclaim for unpaid salary was properly withdrawn from the jury, there being no proof that he had performed his contract with the corporation during the time he had received no salary.

Action in the district court for Hennepin county to recover for money had and received. The case was tried before Nye, J., and a jury which returned a verdict for $1,137.50. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*McDowell & Fosseen,* for appellant.

*Jesse Van Valkenburg,* for respondent.

LEES, C.

Action to recover money had and received for plaintiff's use and benefit. A jury returned a verdict in plaintiff's favor and defendant has appealed from an order denying his motion in the alternative for judgment or a new trial.

For a number of years prior to 1914 defendant and W. G. Reddingius had been copartners in the real estate business. In 1914 they incorporated the Enkema-Reddingius Company (now the W. G. Reddingius Company) and it took over the business of the copartnership. Defendant was president of the corporation, his wife vice president, Reddingius secretary and treasurer, and these three constituted the board of directors. Reddingius owned one-half of the issued capital stock and defendant and his wife the other half. Until the spring of 1919 defendant and Reddingius each drew a salary from the corporation. At that time Reddingius, who was

active in the management of the business, objected to the further payment of defendant's salary on the ground that he was rendering no particular service to the corporation. By agreement of the parties defendant was to draw no salary thereafter and Reddingius was to receive $350 a month for his future services. During the summer of 1919 the corporation bought and sold large quantities of land in this state, made substantial profits and became heavily indebted. Reddingius spent the season in the field while defendant remained in the office in Minneapolis most of the time. In November, 1919, Reddingius returned to Minneapolis. He discovered that defendant had recently charged the corporation and credited himself with 6 months salary at the rate of $350 a month. He objected strenuously but defendant refused to cancel the credit, and the relations between the two men became hostile. On December 13 they entered into a contract for the severance of their business relations. At that time defendant and his wife owned 200 shares of stock and Reddingius the same number. It was agreed that all the stock certificates should be assigned in blank and deposited with a trust company, together with the resignations of the officers; that on or before the first Monday in July, 1920, defendant should make an offer in writing for the sale of his stock to Reddingius and another for the purchase of Reddingius' stock; that the latter might accept either offer within 10 days; that the purchaser of the stock should pay for it within 30 days, and if either party failed to perform the contract he was to forfeit to the other 50 shares of stock. A provision in the contract read thus:

"It is covenanted and agreed between the parties hereto that each, his health permitting, shall devote his full time and best efforts to the business of this company until the expiration of the period of 40 days next ensuing after the first Monday in July, 1920. That each of the parties hereto, as he devotes his full time and best efforts to the Enkema-Reddingius Co. shall receive a salary of $350.00 per month, commencing December 1st, 1919."

In due time defendant offered to take $10,000 for his stock or pay that amount for Reddingius stock. Reddingius elected to ac-

cept the first offer and notified defendant accordingly. The corporation owned and had in its safe notes, mortgages and land contracts amounting to $63,000. It was indebted to five banks on notes which fell due in July and August, 1920. Defendant had guaranteed payment of some of the notes. On June 26, without Reddingius' knowledge or consent, he distributed among the banks all the securities in the safe, pledging them for the payment of the notes. The banks had not asked for collateral security and did not extend the time of payment of the notes.

Reddingius had given demand notes to the corporation for $6,000. Defendant indorsed them as president and delivered them to W. L. Hassett, who immediately brought suit against Reddingius as maker, and the corporation as indorser. The banks also commenced actions against the corporation on its notes and each garnished the others as holders of the securities defendant had pledged. Notwithstanding the embarrassing position in which the corporation was placed by this course of action, Reddingius was able to raise money enough to pay all the claims in suit and to fulfil his contract with defendant. Reference is made to these matters because plaintiff contends that defendant did not devote himself to the furtherance of the business interests of the corporation as stipulated in the contract of December 13.

As president of the corporation, defendant had the right to draw checks on its bank account. Once a month after the contract was executed and until July 1, 1920, he drew a check for his salary, thus receiving $2,275 of the funds of the corporation. Alleging that he had not devoted his entire time and best efforts to the business of the corporation and that he had depreciated the value of its stock and tried to wreck it financially, plaintiff brought this action to recover this sum and was given a verdict for $1,137.50.

1. The jury were instructed in substance that, if defendant rendered services to the corporation in good faith but did not devote all his time to its affairs, he was entitled to compensation for such time as he gave it, the amount to be fixed on the basis of $350 a month for full time. This instruction is attacked on the ground that an action for money had and received is based essentially on contract

and that no promise to restore any of the money received can be implied under the circumstances disclosed by the evidence. Plaintiff's only remedy, it is said, is an action for damages.

This court has favored the extension of the use of actions in form for money had and received. The scope of this form of action is concisely stated in 2 Dunnell, Minn. Dig. § 6128, and was recently discussed at length in Heywood v. Northern Assur. Co. 133 Minn. 360, 158 N. W. 632, Ann. Cas. 1918D, 241, and again in Seastrand v. D. A. Foley & Co. 144 Minn. 239, 175 N. W. 117. It is a form of action designed to make effective a familiar principle of law well expressed in 1 Parsons, Contracts, 4, as follows:

"In this sense, contract is coordinate and commensurate with duty; and it is a familiar principle of law * * * which has a wide * * * application, that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do."

In the case at bar defendant took from the corporation $2,275 of its money, claiming to be entitled to receive it in return for useful services honestly given to protect its interests. If he gave only half of his time, he took more money than he had a right to receive and ought to return the excess. If he devoted part of his time to injuring the credit of the corporation or to hampering it when it was in financial straits, he should not be allowed to keep the pay he took for time thus employed. From a practical standpoint, the measure of recovery is the same as in an action for damages for breach of contract. All the facts necessary to sustain such an action are pleaded. Under the proof the measure of liability would be practically the same. Some writers have said that for a partial failure of consideration, money paid under a contract not by its terms apportionable with reference to the defendant's performance, cannot be recovered in the count for money had and received, although there may be a recovery if there is an entire failure of consideration. This is a statement of a rule and not a reason why there should be such a rule, for it is not clear why a recovery to the extent that the money paid exceeded the value of the benefits received should not be permitted. See Keener, Quasi-Contracts, 305.

We hold that the facts in the instant case justify the use of an action in form one for money had and received and that plaintiff was not limited to an action for damages for breach of contract.

2. It is urged that there was no evidence which would warrant a jury in finding that defendant did not devote his full time and best efforts to the business of the corporation. The record does not sustain this contention. We do not discuss the evidence. It would be of no particular value to any one to detail it.

3. Citing Person v. McCargar, 92 Minn. 294, 99 N. W. 885, and Miller v. Owens, 140 Minn. 351, 168 N. W. 50, defendant urges that there can be no recovery because all the money was voluntarily paid and that by making such payments the corporation waived its right to insist on a forfeiture of any part of defendant's salary for his alleged misconduct. We are referred to many cases in other jurisdictions which support the contention that an action for damages affords the only relief an employer can have after he has paid his employe his wages. These cases illustrate the application of the familiar rule that money voluntarily paid with full knowledge of the facts cannot be recovered back although the claim paid was illegal, but the facts do not bring this case within the scope of the rule on which defendant relies. The money he received he paid to himself. He and his wife were a majority of the board of directors. He had authority to issue and sign checks. He testified that he had full control of the corporation. It would be stretching the doctrine of voluntary payment too far to hold that the corporation paid him knowing that he had not rendered the services it had the right to require of him. Reddingius, a minority director, could not prevent him from drawing his salary except perhaps by legal proceedings, and he is not a party to this action and his failure to act is not a defense to an action by the corporation.

4. In his answer defendant alleged, by way of counterclaim, that plaintiff was indebted to him on the contract of December 13 in the sum of $489.95 as salary from July 1 to August 12, 1920, for services performed during that time. The reply alleged that defendant performed no services for plaintiff in the months of July or August, 1920. The court withdrew the counterclaim from the jury.

Defendant made a separate motion for a new trial of this issue and assigns the denial of the motion as error.   On examining the·record we fail to find any evidence that defendant performed any services after July 1, 1920.   He asserts that the contract itself, without further proof, established his right of recovery, in that it. provides that both parties are to receive compensation for their services until the expiration of 40 days from the first Monday in July, 1920.

In an action to recover his salary, defendant would have to plead and prove performance of the contract on his part.   He did not establish a cause of action by proving that plaintiff paid him nothing after July 1.   It is elementary that one who sues on a contract for the payment of wages must plead and prove his own performance and defendant's breach of the contract.   1 Dunnell, Minn. Dig. §§ 1910, 1911.

We are of the opinion that the case was correctly disposed of. The order appealed from is therefore affirmed.