## TOWN OF BALKAN v. VILLAGE OF BUHL.[1]

February 21, 1924.

No. 23,805.

**Recovery of tax money from municipality by action for money had.**

1. The action for money had and received is a remedy whereby one municipality may recover from another tax money which in equity and good conscience belongs to the former.

**Recovery of tax money from village illegally annexing territory.**

2. Where territory wholly unsuitable for the purpose, and, therefore, not within the statute on the subject, was attempted to be annexed by a village, and the supposed annexation was immediately and successfully attacked by the state in quo warranto proceedings, the attempted annexation never acquired a de facto character so as to

[1] Reported in 197 N. W. 266.

entitle the annexing village to retain any of the tax moneys derived from the territory attempted to be annexed.

## When town may recover tax voluntarily paid to village.

3. Where, pending the proceedings for the annulment of the attempted annexation, the county auditor spreads an annual tax levy of the village against the property, erroneously assuming that it has ceased to be part of the adjoining township and has become a part of the village, and accordingly the owners of the property have voluntarily paid the tax so levied for municipal purposes, and it has been paid to the village rather than the town, the latter is entitled to the money and may recover it. It is a case where the village has unlawfully enriched itself at the expense of the town. Accordingly, the latter's title to the money is clear and it is entitled to judgment upon the quasi-contractual obligation of the village to pay to the town money which in equity and good conscience belongs to it.

Action in the district court for St. Louis county to recover $54,-892.25. From an order, Hughes, J., sustaining plaintiff's demurrer to the answer and counterclaim, defendant appealed. Affirmed.

*L. R. Simons,* for appellant.

*Austin & Austin* and *Charles T. Wangensteen,* for respondent.

STONE, J.

Appeal from an order sustaining a demurrer to an answer and counterclaim which brings here for review the one question as to the right between the parties to the taxes for 1920, assessed for local purposes against the section and a half of land hereinafter referred to.

Plaintiff is an organized town and defendant a village on the Missabe range in St. Louis county. In 1920 the village attempted to annex a considerable portion of the cut-over wilderness which adjoins it. The annexation proceedings were complete and supposedly became effective on or about September 20, 1920. They were immediately challenged by the state by a writ of quo warranto and the attempted annexation was adjudged invalid and finally annulled on October 28, 1921, by a writ of ouster issued pursuant

to the decision of this court in State v. Village of .Buhl, 150 Minn. 203, 184 N. W. 850.

Included in the territory coveted by defendant village was a section and a half, the tax revenue from which for 1920, is now in controversy. It is so rich in iron ore that its assessed valuation is upwards of $4,000,000. It is a part of the town of Balkan attempted by the abortive annexation to be cut-off from it and included within the limits of Buhl.

Thinking that the annexation had been accomplished, the county auditor in the latter months of 1920, spread against this land its proportion of the Buhl tax levy. Nothing was put against it under the Balkan levy. In consequence, the first one-half of the 1920 tax on the land was paid in the spring of 1921 on the basis of the Buhl levy and there was turned over to the village of Buhl on account of that payment $50,175.85. That amount the village received and insists that it has a right to retain.

Before the second half of the 1920 tax became payable, the writ of ouster had issued from this court and the annexation proceedings had been thereby adjudged invalid. As a result, the owners of the land in question made an adjustment with the county officials of the unpaid balance of their 1920 tax, under which nothing more was paid to Buhl, but $16,821.53 went to the town of Balkan.

The town made its usual tax levy for 1920, and, as already indicated, that levy was spread by the county auditor over the land in the township exclusive of the section and a half now under consideration. The entire amount of that levy has been collected and received by the town except for such negligible amount as may be in process of collection in delinquent tax proceedings. This $16,-821.53, therefore, was in addition to the 1920 tax levy of plaintiff. It has received that much more in taxes than the amount of its levy for that year.

The merits of the whole situation are presented by this appeal. May the town recover from the village the upwards of $50,000 collected by it? That is the purpose of the action. That claim is challenged by the answer, and, in addition, defendant by counter-

claim insists that it should recover from plaintiff the $16,821.53 received by it out of the 1920 tax upon this land, and in addition to the amount of its total levy for that year.

1. The action is one for money had and received, and defendant questions its propriety, recognizing, however, the rule of such cases as Todd v. Bettingen, 109 Minn. 493, 124 N. W. 443, and Heywood v. Northern Assurance Co. 133 Minn. 360, 158 N. W. 632. Ann. Cas. 1918D, 241. Little can be added, and certainly the necessity for meeting every wrong with a quick and adequate remedy prevents the subtraction of anything from the reasoning of those cases. "It is a familiar principle of the law * * * that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do." 1 Parsons, Contracts (8th ed.) 4; W. G. Reddingius Co. v. Enkema, 156 Minn. 283, 194 N. W. 646. That is the essence (and it has never been put in better phrase), of the law of quasi-contracts. The consistent application of that doctrine would banish the confusion attending the idea of implied contracts, under which a contract *expressed* by the conduct instead of the words of the parties, is not considered an express contract at all, but one implied not by law but in fact. It is, however, a true express contract and in fact not implied at all. Its expression happens to be by conduct rather than words. Williston, Contracts, § 3; Keener, Quasi-Contracts, 3; Lombard v. Rahilly, 127 Minn. 449, 149 N. W. 950.

The quasi-contract is what was formerly known as the contract implied in law. It has no reference to the intentions or expressions of the parties. The obligation is imposed despite, and frequently in frustration of, their intention. Its nature and use are illustrated and well explained in Carr v. Anderson, 154 Minn. 162, 191 N. W. 407, 26 A. L. R. 557.

A municipal corporation finds no escape from such an obligation, for, as the principle was long ago announced by the Supreme Court: "The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the * * * property of others without authority, the law, independent of any statute, will compel restitution or compensation." Marsh v. Fulton County, 10 Wall.

677, 684, 19 L. ed. 1040. A mere dictum there, the statement was applied as controlling law in Chapman v. County of Douglas, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. ed. 378. A city was subjected to it in Louisiana v. Wood, 102 U. S. 294, 26 L. ed. 153. It has long been settled law.

In a case of quasi-contract, we no longer need the promise, express or implied, that was still considered so necessary in the days when Professor Parsons wrote. Neither promise nor privity, real or imagined, is necessary. When used in implied assumpsit, so-called, they were legal fictions, and "there is no place for fiction in modern law." Heywood v. Northern Assurance Co. supra. Mr. Justice Story was among the first, if not the first, of American jurists to appreciate the utter uselessness of the implied promise and its equally sterile twin, implied privity. Dissenting in Cary v. Curtis, 3 How. 236, (255), he said that the promise implied in law (as distinguished from the one implied in fact, which is a real promise, but expressed by the promisor's conduct rather than his words), "is a result of the potency of the law" and "only the form in which the law announces its own judgment upon the matter of right and duty and remedy."

So it has come about that the thing with which the law is concerned now is obligation rather than promise. It pays no attention to a promise not attended by legal obligation. Given a promise without obligation, the law makes no move for the benefit of the promisee. But given an obligation without a promise, and the obligee has his remedy. So where one has money or property belonging in equity and good conscience to another, the latter is entitled to it, and, if need be, the law will assist him in getting it. In case of the property, if nothing better can be done, its owner or beneficiary will be given its equivalent in money. That is, the law in such case imposes and will enforce, in order to accomplish justice, what is best known as a quasi contractual obligation, so-called because it is precisely like a contract as to method of enforcement and result upon the parties.

So here our concern is not with the propriety of the remedy. The question is what, if any, obligation there is on the part of one of

these municipalities towards the other. If defendant is under the alleged obligation to reimburse plaintiff or plaintiff to pay defendant, the propriety of the remedy is obvious.

2. Defendant's counsel, asserting his right under the general demurrer to the answer to search the entire record, challenges the sufficiency of the complaint. He contends that it shows no right in plaintiff to recover that portion of the 1920 taxes paid to defendant.

The argument is that, from September 20, 1920, to October 28, 1921, there was a de facto annexation of the land to defendant village; that during that period, it was a part of the village for all purposes, and that the resulting tax payments to the village cannot be disturbed by this action to recover them for the town.

If counsel's premise of a de facto annexation were correct, his conclusion might follow, but we cannot agree in his premise.

We may dismiss at once the charge of fraud against defendant village and its officials in connection with the attempted annexation. Proceeding in an open manner, they attempted simply to take advantage of a statute which did not apply. Therefore, the proceeding was without any jurisdiction of its subject matter, and void ab initio. Immediately it was complete, it was attacked by the state under a writ sued out by its constitutional law officer, the attorney general. During the progress of that attack, the town of Balkan cannot be considered as having acquiesced in the annexation. On the contrary, as an interested municipal subdivision of the state, it is entitled to claim whatever rights resulted from the successful outcome of that attack.

The act of the county auditor of St. Louis county in spreading the Buhl, rather than the Balkan, 1920, tax levy against the land, cannot be considered such a recognition of the annexation as to give it a de facto character. Otherwise, we would come to the impossible conclusion that an accounting officer of a minor subdivision of the state can, by his unaided act, confer rights which are denied by the state and the usurpation of which is at the time being, under an attack designed to establish that no such rights exist.

This is not a case, therefore, where the rules attending de facto organizations and officers are of any avail to defendant.

The attempted organization of the county of Columbia in 1900 was very different. There the new county, by reason of its recognition by the Governor, through an executive proclamation, was by the state given temporary recognition and standing. County officers were selected and qualified. The new organization actually functioned for a time as a county. Of course, there was a de facto organization. State ex rel. Hagen v. District Court, 90 Minn. 118, 95 N. W. 591. The new county was finally dissolved because of the "abortive" character of the election thought to have established it. State ex rel. Douglas v. Larson, 89 Minn. 123 (131), 94 N. W. 226.

In that case there was a statute authorizing the proceeding. In the case of Buhl, there was no statute giving any color of authority to its attempt to annex the land in question.

If, here, the state in the exercise of its executive authority had ever recognized the annexation, this court, exercising the judicial power, would go as far as possible under the law to effectuate the executive action. We would not, if it could be prevented, allow public or private detriment to flow from such action, really governmental in its nature. But here the immediate and only governmental action was a denial of and attack upon, and not a recognition of, the attempted extension of the boundaries of Buhl.

The recognition of de facto officials, corporations and the like arises from the public necessities of given cases. The rule is flexible and not to be extended beyond the necessities of the cases as they arise. In this case, we have an attempted annexation which was never confirmed by acquiescence or anything akin to user, except for the unauthorized act of the county auditor in spreading the Buhl rather than the Balkan 1920 taxes against this land. No other problem of taxation has been affected by the attempted annexation; no rights and liabilities have been created because of it. Obviously, therefore, a different situation is presented than was under discussion in State ex rel. Board of County Commissioners, 66 Minn. 519 (528-530), 68 N. W. 767, 69 N. W. 925, 73 N. W. 631.

There, the true principle was stated to be that, on dissolving

a de facto municipal corporation and in settling and adjusting its affairs, "the state itself will, as to such past transactions, recog-- nize its de facto existence so far as required by justice and equity." Here, justice and equity require that the attempted annexation be not recognized at all.

3. We are thus come to the conclusion that this 960 acres of land, so attractive to tax gatherers, never became temporarily or de facto a part of the village of Buhl. On the contrary, it has remained always in the territory of the town of Balkan. But it has contributed nothing to the Balkan tax of 1920. The fact that the owners voluntarily paid a Buhl tax does not alter the situation nor its attendant obligations. That payment was voluntary. If they had so elected, they could have stayed the proceedings for the collection of that tax until the determination of its propriety in the quo warranto proceedings. They did not do so. They voluntarily paid their money into the county treasury, from whence it went direct to defendant. It needs no further discussion to explain our conclusion that defendant had no right to that money and now has no claim to its retention.

But plaintiff must recover on the strength of its own title and not on the weakness of defendant's. We think it has a clear title. True, it is not strictly speaking, a trustee for its taxpayers, particularly the owners of this particular land. It was not entitled to as much as was collected, but it was entitled to the tax for municipal purposes collected from this land in 1920. Such a tax has been paid to defendant. The quality of plaintiff's right is not lessened simply because defendant collected more than the amount of plaintiff's levy. If the tax is now repaid to plaintiff, it will go to the municipality originally entitled to it and for the benefit of the taxpayers, those of the town of Balkan, who in 1920 were entitled to have their taxes reduced to the extent of the contribution from this land. They did not get such a benefit. They are clearly entitled to it now by a recovery of the amount from defendant, just as they would be in case of omitted property by subsequent appropriate collection direct from its owners. State v. Lakeside Land Co. 71 Minn. 283 (289), 73 N. W. 970. No more than an in-

dividual, should one set of taxpayers be permitted wrongfully to enrich themselves at the expense of another group.

We hold, therefore, that plaintiff has a clear right to the money in question. It is clearly money which in equity and good conscience belongs to plaintiff and not to defendant. Its retention would enable defendant wrongfully to enrich itself at the expense of plaintiff—to lower the tax burden of its inhabitants at the expense of those of Balkan. Surely, courts cannot blind themselves to the obvious equities of such a situation and deny a right so clear as that of plaintiff in favor of a party so much in the wrong as defendant.

While the problem is new here, similar ones have been dealt with frequently elsewhere, along the same lines and with the same result. City of Salem v. Marion County, 25 Ore. 449, 36 Pac. 163; City of Eugent v. Lane County 50 Ore. 468, 93 Pac. 225; Humbolt County v. Lander County, 24 Nev. 461, 56 Pac. 228; City of Norfolk v. Norfolk County, 120 Va. 356, 91 S. E. 820; County of Colusa v. County of Glenn, 117 Cal. 434, 49 Pac. 457; Strough v. Board of Sup. of Jefferson County, 119 N. Y. 212, 23 N. E. 552; City of Buffalo v. Erie County, 88 Misc. 591, 151 N. Y. S. 409 (affirmed, 115 N. E. 1036); Putnam County v. Smith County (Tenn.), 164 S. W. 1147.

While it is true that defendant cannot be charged with fraud in connection with the annexation proceedings, the fact remains that, in the view of equity, a wrong was committed by the unauthorized use of a legal proceeding. Thereby to permit defendant to retain any of the taxes wrongfully collected by it from its neighbor's territory, would be to permit it to benefit by its own wrong, or at least one perpetrated for its benefit. Such a result is so objectionable as to require no discussion beyond its bare statement.

This disposes of the whole case. Plaintiff is entitled to retain the $16,821.53 which it collected notwithstanding the attempted annexation, and to recover the amount wrongfully collected by defendant pending the proceeding resulting in the adjudication of its entire invalidity.

Order affirmed.