Peoria School District No. 11, a municipal corporation, hereinafter called plaintiff, brought suit against Glendale Union High School District, a municipal corporation, C.W. Peterson, John A. Foote and George Frye, as supervisors, E.D. Ring, as superintendent of schools, and Ed Oglesby, as treasurer, *Page 153 
all of Maricopa county, hereinafter called defendants, to recover certain moneys which it was alleged were the property of plaintiff. The matter was submitted to the court upon an agreed stipulation of fact, which showed in substance as follows:
During the year 1912, the Glendale Union High School District, of which the present Peoria School District No. 11 was then a part, voted a bond issue in the sum of $30,000. In 1920 the Peoria district ceased to be a portion of the Glendale district, but because the bonded indebtedness had already been incurred, necessarily continued paying its portion of the taxes required to pay the bonds until they were fully satisfied and retired, which was completed prior to September, 1932. In the month last mentioned the board of supervisors of Maricopa county, attempting to act under the provisions of section 1022, Revised Code of 1928, levied a tax on all the property in the Peoria district, for the purpose of making payments on the bonds, notwithstanding they had already been fully paid and retired, and in September, 1933, it again levied a tax for the same purpose. This tax, to the amount of $3,648.12, was collected without any objection or protest on the part of any of the taxpayers in said Peoria School District No. 11, and credited under the provisions of section 1022, supra, to the building fund of the Glendale Union High School District. The fact that the levy of these taxes was not authorized by law because the bonds for the payment of which they were levied had already been fully paid and retired, was not known either to the board of supervisors of Maricopa county or the plaintiff until some time during the month of February, 1934. Thereafter, and prior to the commencement of this action, plaintiff made a claim for the payment into its general fund of the money so illegally levied and collected, and interest *Page 154 
thereon, but the payment was refused, and plaintiff brought this suit.
Various motions and demurrers were filed by defendants, which were overruled by the court, and judgment was rendered in favor of plaintiff against the Glendale district for the amount prayed for, without interest, and impressing it as a trust fund in the keeping of the treasurer of Maricopa county, for the general fund of Peoria School District No. 11.
The real questions before us are, Who is entitled as a matter of law to the money in question, and how can it be recovered by the rightful owner? Sec. 1022, supra, upon the authority of which the money was collected, reads in part as follows:
"Levy of tax to pay bonds and interest. The board of supervisors, at the time of making the levy of taxes for county purposes, must levy a tax for that year upon the taxable property in such district, for the interest and redemption of school bonds, . . . All money, when collected, shall be paid into the county treasury to the credit of the building fund of such district, and must be used only for the payment of principal andinterest on said bonds. . . ." (Italics ours.)
It will be seen by this that the only purpose for which the tax in question was authorized to be levied and for which alone, by the express terms of the section, it could be used had ceased to exist before it was levied and collected. If the taxpayers had refused payment, it could not have been collected, or, if they had paid under protest, they would have the right to recover the money. Sec. 3136, Rev. Code 1928.
[1] This court has held, however, in the cases of GibsonAbstract Co. v. Cochise County, 12 Ariz. 158, 100 P. 453, and Arizona Eastern R. Co. v. Graham County, 20 Ariz. 257,179 P. 959, that when a taxpayer pays an illegal tax, without any objection, no recovery may be had, and this is in line with the overwhelming *Page 155 
weight of authority in every state in the union. 61 C.J. 985, note 21, and cases cited. But there is no suggestion that any protest or objection to the payment was made by anyone.
Though it is true that morally this money belongs to the taxpayers who paid it, there is no legal manner in which they may now recover it. It does not belong to the Glendale district, for it was not levied for the general purposes of that district, but for a specific purpose and that purpose ceased to exist before the levy was made. People v. Board of Supervisors, 136 N.Y. 281, 32 N.E. 854. Nor, indeed, does that district claim it has any legal right to the money, but merely insists that plaintiff has none.
[2] The county treasurer of Maricopa county, when the money was collected by him, became the trustee of an express trust, for the purpose set forth in section 1022, supra, and when that purpose was at an end, he had no authority to pay out any of the money. The supervisors have and claim no interest whatever in the fund, nor does the county school superintendent, and they never received any of it. It would seem that this leaves plaintiff as the only one of the parties which is entitled to the money, for certainly it would appear that someone must get it, and counsel for plaintiff have cited a number of authorities to us, which it is contended hold that where money is illegally collected by one taxing body, which as a matter of law belongs to another, the second may recover it by appropriate action from the first. Among these cases so cited are City of Bisbee v. Cochise County,44 Ariz. 233, 36 P.2d 559; City of Norfolk v. NorfolkCounty, 120 Va. 356, 91 S.E. 820; City of Eugene v. LaneCounty, 50 Or. 468, 93 P. 255; Putnam County v. SmithCounty, 129 Tenn. 394, 164 S.W. 1147; Humboldt County v.Lander County, 24 Nev. 461, *Page 156 56 P. 228; Lyon County v. Storey County, 34 Nev. 243,117 P. 827. In all of these cases, however, it appears that thetax in question was originally a valid and legal one, but that through a mistake it was paid to, or retained by, the wrong municipality. In the leading case of Town of Balkan v. Buhl,158 Minn. 271, 197 N.W. 266, 269, 35 A.L.R. 470, tax levies for general purposes were made by an organized town and also by an incorporated village within the town. The county auditor of the county in which they were both situated, believing that certain land within the town had been properly annexed to the village, spread against such land its proportion of the village tax levy, instead of the town levy, and a large sum was collected by virtue of said levy. It afterwards appeared that the attempted annexation was void, and the town brought suit to recover from the village the money thus improperly collected. It appeared that if the town levy had been collected on the land in controversy, the total amount received would have been much less than that actually collected by the village levy. The court said:
". . . It was not entitled to as much as was collected, but it was entitled to the tax for municipal purposes collected from this land in 1920. Such a tax has been paid to defendant. The quality of plaintiff's right is not lessened simply because defendant collected more than the amount of plaintiff's levy. If the tax is now repaid to plaintiff, it will go to the municipality originally entitled to it and for the benefit of the taxpayers, those of the town of Balkan, who in 1920 were entitled to have their taxes reduced to the extent of the contribution from this land. They did not get such a benefit. They are clearly entitled to it now by a recovery of the amount from defendant, just as they would be in case of omitted property by subsequent appropriate collection direct from its owners. State v.Lakeside Land Co., 71 Minn. 283, 289, 73 N.W. 970. No more than an individual, should one *Page 157 
set of taxpayers be permitted wrongfully to enrich themselves at the expense of another group.
"We hold, therefore, that plaintiff has a clear right to the money in question. It is clearly money which in equity and good conscience, belongs to plaintiff, and not to defendant. Its retention would enable defendant wrongfully to enrich itself at the expense of plaintiff — to lower the tax burden of its inhabitants at the expense of those of Balkan. Surely, courts cannot blind themselves to the obvious equities of such a situation, and deny a right so clear as that of plaintiff in favor of a party so much in the wrong as defendant."
[3] Were it not for one thing, we think the rule laid down therein would be controlling. The tax in the case cited was raised by virtue of a valid tax for general purposes, which the town and the village each were authorized to levy. If that tax was paid to the wrong municipality, the other one undoubtedly had the right to recover it, for it would go into the general fund of the latter and be expended for purposes authorized by the law under which it was levied. The funds involved in the present action, however, were raised by a tax levied for a special purpose which had previously ceased to exist — to pay certain bonds, with the interest thereon. It is money which has passed into the hands of the county treasurer for a special purpose, and which cannot be used for any other purpose.
[4] It is not necessary, however, as intimated by counsel, that if this be the law the money must remain like Mahomet's coffin, suspended between heaven and earth perpetually, for another principle meets the exigencies of the situation. The legislature of Arizona has full power and control not only over the levy of taxes but over the disposition of all public revenue, and this power extends to such funds as are acquired by any political subdivision of the state, subject only to such constitutional restrictions as exist. Section 3, *Page 158 
article IX, is the only portion of the Constitution which might be considered applicable to the situation, and it reads in part as follows:
"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the tax,to which object only it shall be applied." (Italics ours.)
[5] If the object for which the money was collected still existed, the legislature would have no right to divert it, but since the object had previously passed out of existence, we think the general power of the legislature to dispose of public funds is not affected by the constitutional provision, and that body, and that alone, has the right to make such disposition of the money in controversy as under all the facts it shall think proper.
Since the plaintiff in the case must recover on the strength of its own title, and not the weakness of its adversary's, the judgment of the superior court is reversed, and the case remanded with instructions to sustain the demurrers to the complaint.
ROSS, C.J., and McALISTER, J., concur.