**BARNES TOWNSHIP, a Municipal Corporation, Plaintiff and Respondent,**

v.

**CITY OF FARGO, a Municipal Corporation, Defendant and Appellant.**

No. 8065.

Supreme Court of North Dakota.

May 10, 1963.

Conmy, Conmy & Feste, Fargo, for plaintiff and appellant.

Woell & Woell, Casselton, and Ohnstad, Twichell, Maxwell & Ramage, West Fargo, for defendant and respondent.

ERICKSTAD, Judge.

Barnes Township, a municipal corporation adjacent to the City of Fargo, North Dakota, having lost some of its territory to the city through annexation proceedings completed by Fargo in June of 1953, initiated an action against Fargo by summons and complaint dated March 23, 1954.

The material allegations of the complaint were that the City of Fargo, through annexation proceedings, had acquired title to improvements made by Barnes Township, resulting from grading, graveling, and the placing of culverts in the area annexed within the preceding five years, for which the township demanded reimbursement, and that the city was obligated to assume a proportionate share of a certain bonded indebtedness of Barnes Township involving the annexed area.

After some intervening motions and proceedings, the city answered the township, denied all liability, and by counterclaim sought to recover a pro rata share of tax moneys collected through a levy by the township on property subsequently annexed by the city for the years of the various annexations. The city also alleged that the township levied and collected tax moneys from real and personal property annexed by the city for several years subsequent to the year of annexation, and for these years it asked for judgment for all the tax moneys so collected by the township.

The township answered the counterclaim of the city by denying all allegations of the counterclaim except the one which alleged that both the plaintiff and defendant were municipal corporations.

On stipulation of the parties a jury trial was waived, and the case was tried on February 7, 1957, before the District Court of the First Judicial District. Through the judgment ordered by the Honorable John Sad, District Judge, entered on the 29th of August, 1962, both the action of the plaintiff and the counterclaim of the defendant were dismissed with prejudice.

The defendant appealed from that part of the judgment which reads as follows:

"That defendant is not entitled to recover any portion of the taxes levied against the annexed properties when they were a part of Barnes Township."

"That the defendant is not entitled to recover on its counterclaim as the statute of limitations has run against its claim, and said counterclaim is, therefore, dismissed with prejudice."

The main contentions urged by the appellant in support of its appeal are embodied in assignments of error numbered II and III, which read as follows:

"II.

"The Court erred in not entering judgment in favor of defendant for an equitable portion of the township tax levies made for the years in which the various annexations here involved occurred and were collected by the plaintiff in full despite the fact that the properties which produced the taxes were located in and were a part of the City of Fargo during a portion of said years.

"III.

"The Court erred in not entering judgment in favor of the defendant for all township levy taxes collected and received by Barnes Township for the years 1950 and 1951 against the real property and the personal property in the annexed area described in Exhibit 'B' after that area had become a part of the City of Fargo, it having been annexed on June 28th, 1949."

It should be noted that all annexations referred to by specification of error number II were completed by the city subsequent to the time established by statute for the levy of township taxes. Sec. 57–15–19, N.D.C.C.

■ This being the case, we are agreed that the township will not be required to

pay to the annexing city any portion of the tax money collected by the township from taxes levied, prior to the annexations by the city, for township purposes in the years in which the annexations took place, in the absence of a statute providing for such an apportionment and the method and mode thereof.

The appellant city refers us to the case of Town of Balkan v. Village of Buhl, 158 Minn. 271, 197 N.W. 266, 35 A.L.R. 470, wherein the Minnesota court found a quasi contractual obligation on the part of the village of Buhl to repay tax moneys collected through a levy on property of the town of Balkan annexed by the village of Buhl.

In that case, the village of Buhl was found to have illegally annexed a portion of the town of Balkan. Before the annexation was declared void, the village levied taxes on the town property, thereby collecting approximately $50,000 for the first one-half year of the levy. The court required the village to repay to the town of Balkan this money which was illegally levied and illegally collected and which was immediately attacked in the court through proper quo warranto proceedings.

The instant case involves a different situation in that the township of Barnes legally levied taxes on property legally a part of the township at the time of the levy and in that no action was taken by the city to recover any part of the taxes levied by the township on property annexed by the city until an action was commenced by the township to recover for improvements.

The action taken in 1954 on the part of the city was commenced by way of counterclaim and relates to annexations as early as 1948 and as late as 1954. In the Minnesota case aforedescribed, action by the town of Balkan was commenced at the time of the annexation and prior to any possible attachment of any rights or liabilities to the tax moneys collected.

In the case of Township of Saginaw v. School District No. 1, 9 Mich. 541 (1862),

at 543, the court, in a somewhat similar case, said:

"* * * however equitable it may be that the city should have its proportion of the mill tax, or other property belonging to the district when the severance took place, we know of no law giving it to the city, or under which it can be claimed by the city as a legal right."

For the reason cited, the Michigan court reversed the lower court which had allowed the question of proportion of tax funds to go to the jury.

Where the state of California provided for apportionment of tax money in annexation situations similar to the case at bar, it recognized that apportionment of tax money would not be required unless first provided for by the legislature.

In the case of City of Signal Hill v. Los Angeles County, 196 Cal. 161, 236 P. 304, at 306, the court said:

"* * * True, as respondents contend, the question of whether or not and how much of said tax moneys is to be paid to a new city is a political question to be decided in the first instance by the Legislature. But, when the Legislature has acted, the question whether it has accomplished the intended purpose by the particular phraseology employed is a judicial question. * * *"

█ The mode or manner in which the territorial limits of a municipal corporation may be changed is, within constitutional limits, a matter for the legislature to determine. 62 C.J.S. Municipal Corporations § 50, p. 146. That being the case, our legislature had the authority and the opportunity to provide for apportionment of tax money in connection with annexation. As our legislature had the authority to provide for annexation and the method and mode thereof and did, in fact, legislate in this area, its failure to provide for apportionment of tax funds in connection with an-

nexation proceedings may be taken as an intention to permit of no such apportionment. This assumption is further supported by the fact that the legislature did provide in the statute covering annexations by cities for reimbursement, to municipalities from which property was taken by annexation, for improvements made on the property within five years of the annexation, while it remained silent on the matter of apportioning tax funds in connection with annexations. Sec. 40-5108, N.D.R.C. of 1943.

The appellant's second major contention is related to the fact that Barnes Township collected taxes levied for township purposes in the years of 1950 and 1951 on property annexed by the City of Fargo on June 28, 1949.

These taxes were levied and collected by the township while the city was enjoined from levying any city taxes on the annexed Barnes Township property and while the city was restrained from assuming any jurisdiction in the annexed portion of Barnes Township.

This court, subsequent to the aforedescribed levies, in the case of Common School District No. 126 v. City of Fargo, 78 N.D. 583, 51 N.W.2d 364, held, in effect, that the annexation was legal.

In the case of State ex rel. Childs v. Board of Commissioners, 66 Minn. 519, 69 N.W. 925, at 926, 35 L.R.A. 745, where the legality of annexation of part of a county to another county was questioned, the court said:

"If an information in the nature of quo warranto is the proper remedy for ousting or dissolving a municipal corporation in toto, we see no reason in principle why it will not lie to oust such a corporation from specific territory over which it is wrongfully exercising jurisdiction, or to dissolve it so far as it covers that territory. The mistake of some of the courts seems to be in assuming that, as to such territory, the corporation may and should in all cases be wiped out as if it had never existed, which is the necessary effect of allowing its existence in such territory to be attacked collaterally. But, where the municipal corporation has acquired a de facto existence in such territory, this assumption is erroneous, and the corporation cannot, as to such territory, be thus wiped out. The state is entitled to dissolve it for all future purposes as far as it covers such territory, but not to wipe it out from the beginning, and thereby destroy all rights which have arisen by reason of such de facto existence, and create liabilities from which persons are protected by reason of the same. On the contrary, in settling and adjusting its affairs, the state itself will, as to such past transactions, recognize its de facto existence as far as required by justice and equity. * * *"

If considerations of sound public policy there required that the de facto existence be dissolved only for future purposes, sound public policy would seem to dictate that this court's finding, that the annexation by the City of Fargo in the instant case was legal, have its legal effect in connection with the levy and collection of taxes in the annexed area only as to tax levies made subsequent to such determination by this court.

Taxation is a governmental function necessary to the maintenance of orderly continuity of government. Rights and liabilities incurred as a result of the levy of taxes and the expenditure of tax funds for legitimate governmental purposes must be preserved.

In the instant case the township made its levy and collected its taxes on what was formerly township property and over which by court order the City of Fargo had been enjoined from exercising any jurisdiction. There is no showing that the money collected from the taxes so levied was not used for the benefit of all of the people of Barnes Township. The city should not be paid for services it rendered in violation of a court

order. Rights and liabilities have undoubtedly been created through the taxation and expenditure of tax funds under the court's restraining order, which would be upset and result in confusion if this court were to declare that the taxes levied by the township during the period of the restraining order were illegally levied, so that the tax money collected as a result thereof by the township should now be paid to the city.

In the case of Warwick County v. City of Newport News, 120 Va. 177, 90 S.E. 644, at 652, the Virginia court said:

"The order of the trial court provided that the annexation therein determined upon should take effect and be in force from and after the 31st day of December, 1914; but, by reason of the suspension of that order during the pendency of this appeal, it becomes necessary, in order to avoid confusion, to change the time at which the annexation shall take place and to amend or modify the seventh clause of the order. Therefore it will be provided by this court that the annexation shall take place and be in force from and after the 31st day of December, 1916, * * *."

The Supreme Court of Appeals of Virginia thus, in effect, permitted the county to retain tax funds it received from taxes levied on property of the county which had been annexed by the city for the two years during which the lower court's order approving the annexation was suspended by reason of the appeal, for the simple reason that confusion would otherwise result.

In the instant case the city has no statutory basis for recovery and thus must base its claim for recovery on equitable principles. In a balancing of equities as between the city, which was enjoined from exercising jurisdiction, and the township, which actually exercised jurisdiction under a court order, equitable principles and considerations of sound public policy urge us to hold that the tax levies made by the township for township purposes on property annexed by the city but formerly a part of the township for the years during which the city was enjoined from exercising any jurisdiction over the property pending adjudication, were a necessary and proper function in assuring continuity of government.

To require the township to reimburse the city under said circumstances would create confusion and hardship, upsetting rights established and liabilities incurred under the said injunction, contrary to equity and sound public policy.

For the reasons stated herein we hereby affirm the decision of the trial court.

MORRIS, C. J., and ERICKSTAD, STRUTZ, TEIGEN and BURKE, JJ., concur.